# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
September 4, 2013 Session

## STATE OF TENNESSEE v. DAVID DWAYNE BELL

### Appeal by Permission from the Court of Criminal Appeals
### Circuit Court for Sevier County
### No. 14953III     Rex Henry Ogle, Judge

### No. E2011-01241-SC-R11-CD - Filed February 20, 2014

This appeal involves the weight that should be given to a motorist's performance on field sobriety tests in determining whether probable cause existed to arrest the motorist for driving under the influence of an intoxicant ("DUI").  A law enforcement officer stopped a motorist who was driving in the wrong direction on a divided highway in Sevier County.  Another officer administered several field sobriety tests, and arrested the motorist for DUI because the motorist had been driving in the wrong direction on a divided highway, smelled of alcohol, and admitted that he had been drinking.  When the grand jury returned a presentment charging the motorist with DUI and DUI per se, he filed a motion in the Circuit Court for Sevier County to suppress the evidence and to dismiss the charges.  The trial court dismissed the charges on the ground that the officer lacked probable cause to arrest the motorist in light of his performance on the field sobriety tests.  The Court of Criminal Appeals affirmed. *State v. Bell*, No. E2011-01241-CCA-R3-CD, 2012 WL 3776695 (Tenn. Crim. App. Aug. 31, 2012).  We granted the State's Tenn. R. App. P. 11 application for permission to appeal and now hold that the officer had probable cause to arrest the motorist for DUI without a warrant.  Accordingly, we reverse the judgment of the Court of Criminal Appeals and the trial court, reinstate the charges, and remand to the trial court for further proceedings.

### Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Criminal Appeals Reversed and Remanded

WILLIAM C. KOCH, JR., J., delivered the opinion of the Court, in which GARY R. WADE, C.J., JANICE M. HOLDER, CORNELIA A. CLARK, and SHARON G. LEE, JJ., joined.

Robert E. Cooper, Jr., Attorney General and Reporter; William E. Young, Solicitor General; Nicholas W. Spangler, Assistant Attorney General; and Leslie E. Price, Senior Counsel;

James Bruce Dunn, District Attorney General; and Greg Eshbaugh, Assistant District Attorney General, for the appellant, State of Tennessee.

Bryan E. Delius (at trial), and Bryce W. McKenzie, Sevierville, Tennessee (on appeal), for the appellee, David Dwayne Bell.

**OPINION**

**I.**

David Dwayne Bell[1] stopped by The Gnome[2] prior to a planned trip to the beach. When he left the pub in the early morning hours of May 13, 2009, Mr. Bell took a wrong turn onto U.S. Highway 441, a divided highway, and began driving south in the northbound lanes. Sevier County Deputy Sheriff Jayson Parton stopped Mr. Bell and radioed for assistance from the Sevierville Police Department because the stop occurred within the city limits of Sevierville.

When Officer Timothy Russell of the Sevierville Police Department arrived at the scene, Mr. Bell was already standing outside his automobile. Officer Russell noticed that Mr. Bell smelled of alcohol. When Officer Russell asked Mr. Bell how much alcohol he had consumed, Mr. Bell replied, "More than I should have, I know. I'm not fighting that."[3] When asked to explain why he was driving on the wrong side of the road, Mr. Bell simply apologized and explained that he had realized his mistake as soon as he made it. Deputy Parton commented that he hoped Mr. Bell would have realized his mistake because cars had been passing him going in the opposite direction.

Officer Russell requested that Mr. Bell perform several field sobriety tests. Initially, Officer Russell administered three "pre-exit" or "non-standardized" tests. Mr. Bell first performed a four-finger count.[4] Mr. Bell next performed an alphabet recitation in which he

---

[1]Mr. Bell's name in this record appears as "David Dwayne Bell" and as "David Duwayne Bell." For the purpose of this opinion, we will refer to him as "David Dwayne Bell," the name appearing on the presentments and on the brief filed on his behalf in this Court.

[2]"The Gnome" is a shorthand reference to The Roaming Gnome Pub & Eatery located in Sevierville.

[3]Officer Russell's interactions with Mr. Bell were recorded by the video camera in his police cruiser. However, there are times when the two are off camera or when the field of view is partially obscured. The video recording, with its accompanying audio, was introduced at the suppression hearing.

[4]The four-finger count required Mr. Bell to audibly count to four while touching each finger to his
(continued...)

audibly recited the alphabet using mid-range starting and ending points, in this case beginning with the letter "G" and ending with the letter "S." Lastly, Officer Russell asked Mr. Bell his birth year and what year he turned a certain age, in this case his sixth birthday. According to Officer Russell, Mr. Bell performed each of these tests satisfactorily and his mental functioning appeared to be "excellent" at that time.

In addition to these three "non-standardized tests," Officer Russell required Mr. Bell to perform three "standardized" field sobriety tests. Officer Russell had been trained in administering and interpreting these tests. They included: (1) the horizontal gaze nystagmus ("HGN") test;[5] (2) the one-leg stand test; and (3) the walk-and-turn test.[6] The State did not offer the results of the HGN test at the suppression hearing, and it is not at issue on this appeal.

The one-leg stand test required Mr. Bell to raise one foot off the ground and to maintain his balance for a set time period. According to Officer Russell, putting the raised foot back on the ground before a count of ten is an indication of intoxication. Mr. Bell was able to maintain his balance on one foot until a count of twenty-three when Officer Russell advised him that he could stop.[7]

---

[4](...continued)
thumb in sequence. Mr. Bell was required to perform this task three times, reversing the order of his fingers each time.

[5]The HGN test tracks the movements of the eyes in order to gauge whether an individual might be under the influence of an intoxicant. *State v. Murphy*, 953 S.W.2d 200, 201-02 (Tenn. 1997). The HGN test is a scientific test and must therefore satisfy the requirements of Tenn. R. Evid. 702 and 703 to be admissible. *State v. Murphy*, 953 S.W.2d at 203.

[6]The standardized tests resulted from an evaluation process by the National Highway Traffic Safety Administration ("NHTSA"). David Sandler, *Expert and Opinion Testimony of Law Enforcement Officers Regarding Identification of Drug Impaired Drivers*, 23 U. Haw. L. Rev. 151, 151 n.2 (2000); Stephanie E. Busloff, Comment, *Can Your Eyes Be Used Against You? The Use of the Horizontal Gaze Nystagmus Test in the Courtroom*, 84 J. Crim. L. & Criminology 203, 203 (1993) ("Busloff"). In 1984, NHTSA published an instruction manual for training law enforcement officers in the tests determined to be the most effective for evaluating intoxication at roadside: the walk-and-turn, the one-leg stand, and the HGN. Busloff, 84 J. Crim. L. & Criminology at 203, 207. Obviously, the "non-standardized" tests are not included in the battery of tests determined by NHTSA to be the most effective for evaluating intoxication at roadside. *See* Busloff, 84 J. Crim. L. & Criminology at 203 n.1, 207. However, neither party has urged this Court to consider performance on the non-standardized tests differently than that on the standardized tests.

[7]During the suppression hearing, Officer Russell noted that Mr. Bell raised his arms and leaned to the left during the test in order to maintain his balance. He stated that the raising of the arms by six inches or less was not an indication of intoxication and that he did not measure how much Mr. Bell raised his arms.
(continued...)

The walk-and-turn test required Mr. Bell to take nine steps, heel to toe, along a straight line and then turn and return to the starting point in the same fashion. Mr. Bell took the proper number of steps each way in a straight line without staggering or losing his balance. However, Officer Russell faulted Mr. Bell's performance of the test because: (1) he stepped away from the starting position prematurely despite being instructed not to do so; (2) he did not execute the turn in the demonstrated manner; and (3) on several of his steps, Mr. Bell did not place his heel to his toe.

After administering the field sobriety tests to Mr. Bell, Officer Russell asked him "how bad" Mr. Bell's female passenger was. Mr. Bell initially responded, "Oh, she's better than I," but he broke off this response and said, "We're not that bad, okay." Based on the circumstances he had observed at the scene, Officer Russell was unpersuaded. He decided that Mr. Bell was under the influence of alcohol and that it was unsafe for him to continue to drive that night. Accordingly, Officer Russell placed Mr. Bell under arrest for DUI.

On January 2, 2010, a Sevier County grand jury charged Mr. Bell with DUI[8] and DUI per se.[9] On June 23, 2010, Mr. Bell filed a motion to suppress the evidence obtained following his arrest on May 13, 2009.[10] Mr. Bell contended that he had passed all the field sobriety tests, and as a result, his warrantless arrest was not supported by probable cause.

Officer Russell was the only witness at the suppression hearing conducted on April 19, 2011. At the conclusion of the hearing, the trial court decided that Officer Russell lacked probable cause to arrest Mr. Bell and dismissed both charges against him.[11] More

[7](...continued)
Officer Russell also stated that the blue lights on his cruiser were on during the test and that these lights could have affected Mr. Bell's point of reference.

[8]Tenn. Code Ann. § 55-10-401(1) (2012) (making it unlawful for any person to drive an automobile on any public road or highway while "[u]nder the influence of any intoxicant . . . that impairs the driver's ability to safely operate a motor vehicle by depriving the driver of the clearness of mind and control of oneself which the driver would otherwise possess").

[9]Tenn. Code Ann. § 55-10-401(2) (2012) (making it unlawful for any person to drive an automobile on any public road or highway while "[t]he alcohol concentration in the person's blood or breath is eight-hundredths of one percent (0.08%) or more"). Count 2 of the presentment alleged that the alcohol concentration in Mr. Bell's blood was .15%.

[10]Although not styled as such, Mr. Bell's motion also requested that "the case against the Defendant [be] dismissed as the State will have no evidence upon which to proceed."

[11]We note that the trial court, in spite of ruling that Officer Russell lacked probable cause to arrest
(continued...)

specifically, the trial court stated, "Well, as I say, I'm just afraid that as to the probable cause -- and granted, going down the wrong way, I . . . agree, but I honestly think he did pretty dog-gone good on the field sobriety tests, better than most I've seen." On May 18, 2011, the trial court entered a judgment dismissing both charges against Mr. Bell.

The State appealed to the Court of Criminal Appeals. On August 31, 2012, the Court of Criminal Appeals affirmed the trial court's decision. The intermediate appellate court noted, based on the circumstances leading up to the field sobriety tests, that "any reasonably prudent officer would have been justified in suspecting the defendant of DUI and in investigating further." *State v. Bell*, 2012 WL 3776695, at *4. However, the court also interpreted "the slightly more colorful comments made by the trial court in its ruling from the bench on the defendant's suppression motion as a finding, as a factual matter, that the defendant passed all of the field sobriety tests that he was given." *State v. Bell*, 2012 WL 3776695, at *4. Based on this conclusion, the Court of Criminal Appeals held that "once Officer Russell had witnessed the defendant's uninterrupted success on a battery of field sobriety tests, there was not probable cause to arrest the defendant for DUI given the totality of the circumstances and all of the information available to the officer." *State v. Bell*, 2012 WL 3776695, at *4. We granted the State's application for permission to appeal.

## II.

This appeal comes to us by way of a suppression hearing. The appropriate standard for reviewing a trial court's decision at a suppression hearing is familiar. Reviewing courts must uphold a trial court's findings of fact in a suppression hearing unless the evidence preponderates otherwise. *State v. Climer*, 400 S.W.3d 537, 556 (Tenn. 2013); *State v. Day*, 263 S.W.3d 891, 900 (Tenn. 2008) (citing *State v. Williams*, 185 S.W.3d 311, 314 (Tenn. 2006)). The credibility of the witnesses, the weight and value of the evidence, and the resolution of conflicts in the evidence are matters entrusted to the trial court as the trier of fact. *State v. Echols*, 382 S.W.3d 266, 277 (Tenn. 2012) (citing *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)); *State v. Garcia*, 123 S.W.3d 335, 342 (Tenn. 2003); *State v. Yeargan*, 958 S.W.2d 626, 628 (Tenn. 1997).

---

[11](...continued)

Mr. Bell, accredited Officer Russell's testimony. We also note that the trial court improperly made reference to personal experience outside the record when discussing Mr. Bell's driving the wrong direction on U.S. Highway 441. *See Vaughn v. Shelby Williams of Tenn., Inc.*, 813 S.W.2d 132, 133 (Tenn. 1991) (recognizing that a "judge is not to use from the bench under the guise of judicial knowledge, that which he knows only as an individual observer outside of the judicial proceedings").

On appeal, the prevailing party in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence. *State v. Echols*, 382 S.W.3d at 277; *State v. Day*, 263 S.W.3d at 900; *State v. Odom*, 928 S.W.2d at 23. However, while deference is due the trial court with respect to findings of fact, the application of the law to the facts is a question of law that appellate courts review de novo with no presumption of correctness. *State v. Moats*, 403 S.W.3d 170, 177 (Tenn. 2013); *State v. Echols*, 382 S.W.3d at 277 (citing *State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001)).

The particular question posed during the suppression hearing was whether Officer Russell had probable cause to arrest Mr. Bell for DUI without a warrant. The determination of probable cause is a mixed question of law and fact that we review de novo. *Ornelas v. United States*, 517 U.S. 690, 696-98 (1996); *see also State v. Davis*, 354 S.W.3d 718, 726 (Tenn. 2011) (stating that whether reasonable suspicion existed to validate a traffic stop is a mixed question of law and fact that is reviewed de novo without a presumption of correctness). Although the determination of probable cause is highly fact-dependent, the applicable law is well-established.

The warrantless arrest of Mr. Bell implicates the protections of the Fourth Amendment to the United States Constitution and Article I, Section 7 of the Tennessee Constitution. These constitutional provisions protect individuals against unreasonable searches and seizures.[12] *State v. Day*, 263 S.W.3d at 900-01. They are designed "to prevent arbitrary and oppressive interference . . . with the privacy and personal security of individuals." *State v. Day*, 263 S.W.3d at 901 (quoting *I.N.S. v. Delgado*, 466 U.S. 210, 215 (1984)). The provisions are the wellspring of the basic constitutional rule that a warrantless search or seizure is presumed unreasonable and any evidence discovered thereby is subject to suppression. *See Kentucky v. King*, ___ U.S. ___, ___, 131 S.Ct. 1849, 1856 (2011); *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55 (1971); *State v. Day*, 263 S.W.3d at 901; *State v. Daniel*, 12 S.W.3d 420, 424 (Tenn. 2000).

However, there are exceptions to this basic rule. *Kentucky v. King*, 131 S.Ct. at 1856; *State v. Nicholson*, 188 S.W.3d 649, 656 (Tenn. 2006); *State v. Garcia*, 123 S.W.3d at 343. An arrest supported by probable cause is just such an exception. *State v. Echols*, 382 S.W.3d at 277 (citing *State v. Hanning*, 296 S.W.3d 44, 48 (Tenn. 2009)); *see also Virginia v. Moore*, 553 U.S. 164, 171 (2008). Thus, Tennessee law provides that an officer may make a

_____

[12]The Fourth Amendment provides that "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated, and no [w]arrants shall issue, but upon probable cause." U.S. Const. amend. IV. Likewise, Article I, Section 7 provides that "the people shall be secure in their persons . . . from unreasonable searches and seizures." Tenn. Const. art. I, § 7.

warrantless arrest for DUI – as "a public offense committed or a breach of the peace threatened in the officer's presence" – so long as probable cause exists. Tenn. Code Ann. § 40-7-103(a)(1) (2012); *see State ex rel. Harbin v. Dunn*, 39 Tenn. App. 190, 196-97, 282 S.W.2d 203, 206 (1943).

The concept of probable cause has been the subject of much discussion. The United States Supreme Court has observed that "[a]rticulating precisely what . . . 'probable cause' mean[s] is not possible." *Ornelas v. United States*, 517 U.S. at 695. However, "[t]he substance of all the definitions of probable cause is a reasonable ground for belief of guilt." *Brinegar v. United States*, 338 U.S. 160, 175 (1949) (citation and quotation marks omitted). Probable cause must be more than mere suspicion, *State v. Echols*, 382 S.W.3d at 278 (quoting *State v. Lawrence*, 154 S.W.3d 71, 76 (Tenn. 2005)), but it need not be absolute certainty, *State v. Melson*, 638 S.W.2d 342, 350 (Tenn. 1982).

The United States Supreme Court has observed that "[i]n dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Draper v. United States*, 358 U.S. 307, 313 (1959) (quoting *Brinegar v. United States*, 338 U.S. at 175); *see also State v. Echols*, 382 S.W.3d at 278; *State v. Melson*, 638 S.W.2d at 351. Echoing the United States Supreme Court, we have noted that "the probable-cause standard is . . . a practical, nontechnical conception." *State v. Jacumin*, 778 S.W.2d 430, 432 (Tenn. 1989) (quoting *Brinegar v. United States*, 338 U.S. at 176). Thus, probable cause exists when "at the time of the arrest, the facts and circumstances within the knowledge of the officers, and of which they had reasonably trustworthy information, are sufficient to warrant a prudent person in believing that the defendant had committed or was committing an offense." *State v. Echols*, 382 S.W.3d at 277-78 (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)) (alterations and quotation marks omitted); *see also State v. Lawrence*, 154 S.W.3d at 75-76; *State v. Melson*, 638 S.W.2d at 350-51.

The probable cause standard seeks "to safeguard citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime. [It] also seek[s] to give fair leeway for enforcing the law in the community's protection." *Brinegar v. United States*, 338 U.S. at 176; *see also State v. Williams*, 185 S.W.3d at 315. The United States Supreme Court has also noted that it affords "the best compromise that has been found for accommodating these often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice." *Brinegar v. United States*, 338 U.S. at 176.

When determining whether probable cause existed for a warrantless arrest, courts should consider the collective knowledge that law enforcement possessed at the time of the arrest, provided that a sufficient nexus of communication existed between the arresting officer and any other officer or officers who possessed relevant information. Such a nexus exists when the officers are relaying information or when one officer directs another officer to act. *State v. Echols*, 382 S.W.3d at 278 (citing 6 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 3.5(a)-(b), at 269-85 (4th ed. 2004)). But it matters not whether the arresting officers themselves believed that probable cause existed. *State v. Huddleston*, 924 S.W.2d 666, 676 (Tenn. 1996) ("[An officer's] subjective belief that he did not have enough evidence to obtain a warrant is irrelevant to whether or not probable cause actually existed . . . .").

## III.

We now examine the facts adduced at Mr. Bell's suppression hearing and apply the law to these facts. The State takes issue with the holding of the Court of Criminal Appeals in two respects. The State contends that the Court of Criminal Appeals erred (1) by concluding that the trial court found, as a factual matter, that Mr. Bell had exhibited "uninterrupted success" on the field sobriety tests, and (2) by concluding that the facts failed to establish probable cause that Mr. Bell was driving while intoxicated. For his part, Mr. Bell argues that, affording him the strongest legitimate view of the evidence adduced at the suppression hearing, the trial court and the Court of Criminal Appeals were correct in concluding that the facts known to Officer Russell at the time of the arrest failed to establish probable cause for DUI.

## A.

We begin our analysis by noting several facts that are, in our judgment, not in dispute. Mr. Bell was driving in the wrong direction on a divided highway in the early morning hours of Wednesday, May 13, 2009. Deputy Parton appropriately stopped Mr. Bell.[13] Mr. Bell smelled of alcohol, and he admitted that he had imbibed "more than [he] should have" that night.

Mr. Bell's performance on the field sobriety tests is in dispute. In light of the entirety of Officer Russell's testimony and the trial court's accreditation of it, the State takes issue

---

[13] Mr. Bell agrees that Deputy Parton's initial stop was a valid investigatory stop. *See Terry v. Ohio*, 392 U.S. 1, 20-21 (1968) (holding that a law enforcement officer may make an investigatory stop based on reasonable suspicion, supported by specific and articulable facts, that a criminal offense has been or is about to be committed); *State v. Bridges*, 963 S.W.2d 487, 492 (Tenn. 1997) (same).

with the conclusion of the Court of Criminal Appeals that Mr. Bell exhibited "uninterrupted success" on the field sobriety tests. *State v. Bell*, 2012 WL 3776695, at \*4. Even if we agreed with the Court of Criminal Appeals that Mr. Bell performed all of the field sobriety tests satisfactorily, we must respectfully disagree with both the trial court's and the Court of Criminal Appeals's conclusion that Officer Russell lacked probable cause to arrest Mr. Bell for DUI.

**B.**

The pivotal question in this case is whether, at the time of the arrest, the facts and circumstances within Officer Russell's knowledge, including those communicated by Deputy Parton, were sufficient to enable a prudent person to believe that Mr. Bell had committed or was committing the offense of DUI. *See State v. Echols*, 382 S.W.3d at 277-78. The answer to this question requires careful consideration of the significance of Mr. Bell's performance on the field sobriety tests against the background of the other circumstances surrounding his arrest. Mr. Bell argues, as the Court of Criminal Appeals held, that his performance on the field sobriety tests was so significant that Officer Russell lacked probable cause to arrest him. The State argues to the contrary.

The Court of Criminal Appeals considered a factual scenario very similar to the one involved in this case in *State v. Evetts*, 670 S.W.2d 640 (Tenn. Crim. App. 1984). Mr. Evetts collided with another vehicle very late in the evening. Even though he smelled of alcohol, the officers did not request him to perform any field sobriety tests. *State v. Evetts*, 670 S.W.2d at 641. Mr. Evetts submitted to a breath alcohol test after he was arrested for DUI but later moved to exclude the results of that test.

Based on evidence that Mr. Evetts exhibited no outward signs of intoxication at the scene of the accident, the trial court held that the officers lacked probable cause to arrest him for DUI and, therefore, that the results of the breath alcohol test were inadmissible. *State v. Evetts*, 670 S.W.2d at 641. The Court of Criminal Appeals reversed, finding that probable cause was established by Mr. Evetts's collision with another vehicle and by the smell of alcohol, even though Mr. Evetts's behavior did not otherwise suggest that he was intoxicated. *State v. Evetts*, 670 S.W.2d at 642.

The State argues that Mr. Bell, to the extent that he performed field sobriety tests satisfactorily, should be viewed no differently than Mr. Evetts, who exhibited no outward signs of intoxication. To support its argument, the State points to decisions in other jurisdictions which held that satisfactory performance on field sobriety tests did not, by itself, undercut the existence of probable cause established by other facts regarding the defendant's conduct prior to his or her arrest.

In 1986, for example, the Minnesota Court of Appeals analyzed a DUI arrest similar to this case. A motorist, who was stopped during the early morning hours for speeding, smelled of alcohol, had bloodshot eyes, and admitted to having "had a few." He was arrested even though he performed several field sobriety tests with varying degrees of success. *State v. Grohoski*, 390 N.W.2d 348, 350-51 (Minn. Ct. App. 1986). The trial court suppressed the results of a subsequent breath test, but the appellate court reversed, faulting the trial court for having "improperly focused on the absence of other indicia of intoxication such as erratic driving, slurred speech, and dilated pupils." *State v. Grohoski*, 390 N.W.2d at 351. Noting that a "suspect need not exhibit every known sign of intoxication in order to support a determination of probable cause," the court determined that probable cause existed to arrest the motorist without a warrant, based on the motorist's traffic violation, bloodshot eyes, odor of alcohol, and admission of drinking. *State v. Grohoski*, 390 N.W.2d at 351.

In 1987, the Pennsylvania Commonwealth Court reviewed a similar DUI arrest in which the motorist was involved in an accident. His eyes were bloodshot and his pupils dilated; he smelled of alcohol; and he admitted to having one beer. However, the motorist successfully completed the heel-to-toe straight-line walk test. *Craze v. Commonwealth*, 533 A.2d 519, 520 (Pa. Commw. Ct. 1987). After the motorist's license was suspended for refusing a blood test, he challenged the suspension on the ground that the officer lacked the requisite "reasonable grounds"[14] to request a breathalyzer test. After considering the facts and circumstances "as a whole," the court concluded reasonable grounds existed "despite the fact that [the motorist] was able to pass the field sobriety test." *Craze v. Commonwealth*, 533 A.2d at 521.

In 1990, the Alaska Court of Appeals addressed a case in which the motorist was stopped for speeding during the early morning hours. The motorist smelled of alcohol, had bloodshot eyes, admitted to having consumed "two or three beers," and exhibited some confusion and difficulty in producing his driver's license. Nonetheless, he was able to satisfactorily complete four out of the five field sobriety tests administered to him.[15] *State v. Grier*, 791 P.2d 627, 628 (Alaska Ct. App. 1990). The trial court granted the motorist's motion to suppress the videotape of the stop and the results of a breathalyzer test and a blood test on the ground that the officers lacked probable cause to arrest him. *State v. Grier*, 791 P.2d at 628. Specifically, the motorist insisted "that under the totality of the circumstances

---

[14]Under Pennsylvania law, "[r]easonable grounds exist when, viewing the facts and circumstances as they appeared at the time, a reasonable person in the position of the police officer could have concluded that the motorist was operating the vehicle and under the influence of intoxicating liquor." *Craze v. Commonwealth*, 533 A.2d at 521 (quotation marks omitted).

[15]The motorist successfully completed the alphabet test, the counting test, the walk-and-turn test, and the one-leg stand test. He was not successful on the HGN test. *State v. Grier*, 791 P.2d at 628.

the facts are as consistent with innocence as they are with guilt." *State v. Grier*, 791 P.2d at 632 n.3.

The Alaska Court of Appeals disagreed. After pointing out that "[i]n dealing with probable cause, . . . we deal with probabilities," *State v. Grier*, 791 P.2d at 631 (alteration in original) (quoting *Brinegar v. United States*, 338 U.S. at 175), the court held that "[w]here a person of reasonable caution would be justified in the belief that an offense has been committed and the defendant committed it, probable cause is established even though the facts known to the officer could also be reconciled with innocence." *State v. Grier*, 791 P.2d at 632 n.3.

Most recently, the Delaware Supreme Court addressed the weight that should be given to a motorist's successful completion of field sobriety tests when determining the existence of probable cause. The arresting officer followed the motorist after observing her tailgating another automobile and making a left turn without signaling. After the motorist parked in a restaurant parking lot, the officer approached her automobile and noticed that the motorist smelled of alcohol and that she was argumentative. While the motorist's face was flushed, the officer could not see her eyes because she was wearing sunglasses. The motorist admitted to having had a drink one hour and a half earlier. *Lefebvre v. State*, 19 A.3d 287, 291 (Del. 2011).[16] The officers arrested the motorist even though she performed well on four field sobriety tests.[17]

The motorist conceded, and the Delaware Supreme Court agreed, that the circumstances leading up to the administration of the field sobriety tests established probable cause for a DUI arrest. The motorist had committed a traffic violation, had the odor of alcohol and a flushed face, had admitted to drinking alcohol, and had stated prior to performing the one-leg stand test that she was "not that good at this sober." *Lefebvre v. State*, 19 A.3d at 292. Nevertheless, the motorist argued that her performance on the field sobriety tests constituted "overwhelming evidence" that she was not impaired. *Lefebvre v. State*, 19 A.3d at 293-94.

---

[16]Whether the motorist's speech was slurred appears to be an open question. The officers testified that her speech was slurred. *Lefebvre v. State*, 19 A.3d at 290-91. However, the video of the stop reflected that her speech was understandable. One officer indicated that the video did not accurately depict the motorist's speech. *Lefebvre v. State*, 19 A.3d at 291.

[17]These tests included the four-finger count test, the alphabet test, a test requiring her to count backward from 98 to 87, the walk-and-turn test, and the one-leg stand test. The motorist's only slip-up occurred prior to the one-leg stand test when she commented, "I'm not that good at this sober." *Lefebvre v. State*, 19 A.3d at 291-92.

The Delaware Supreme Court, in a divided opinion, found the argument unpersuasive, stating that it "misconstrues the evidentiary weight of non-failing results on standardized field sobriety tests, insofar as those results pertain to the 'totality of the circumstances' legal standard for determining probable cause to arrest for a DUI offense." *Lefebvre v. State*, 19 A.3d at 294. The court explained that the "results of field sobriety tests may either eliminate suspicion or elevate suspicion into probable cause but they are of insufficient evidentiary weight to eliminate *probable cause* that had already been established by the totality of the circumstances before the performance of the field sobriety tests." *Lefebvre v. State,* 19 A.3d at 295.

The majority of the Delaware Supreme Court also rejected the premise of the two dissenting justices that "successful performance on field sobriety tests is of such great evidentiary weight that it can defeat the probable cause that preceded the administrations of those tests." *Lefebvre v. State*, 19 A.3d at 296. Observing that this "assertion [was] not supported by NHTSA's own materials," the Court pointed out that NHTSA's validation studies found the walk-and-turn test, by itself, to be 68% accurate and the one-leg stand test, by itself, to be 65% accurate.[18] *Lefebvre v. State*, 19 A.3d at 296 (citations omitted). Thus, the Court stated that NHTSA's studies reflected "that an individual may pass field tests and still be under the influence of alcohol." *Lefebvre v. State*, 19 A.3d at 296.

We recognize that not all courts that have addressed this question have reached the same conclusion as the Delaware Supreme Court, the Alaska Court of Appeals, the Minnesota Court of Appeals, and the Pennsylvania Commonwealth Court.[19] However, we have determined that the approach employed by these courts is entirely consistent with our holdings that determining the existence of probable cause to support a warrantless arrest is not a technical process. Rather, it is a process requiring reviewing courts to conduct a

---

[18]These figures represent the results of the original validation studies from 1981. Validation studies from 1998 revealed that the accuracy rate of the walk-and-turn, by itself, had improved to 79% and the accuracy rate of the one-leg stand, by itself, had improved to 83%. National Highway Traffic Safety Administration, *Development of a Standardized Field Sobriety Test (SFST) Training Management System* app. a (2001), *available at* http://www.nhtsa.gov/people/injury/alcohol/sfst/appendix_a.htm (last visited Feb. 10, 2014). Although the accuracy rates had improved, NHTSA still cautioned that "some experienced drinkers can perform physical and cognitive tests acceptably, even with a BAC [blood alcohol concentration] greater than 0.10 percent." National Highway Traffic Safety Administration, *Development of a Standardized Field Sobriety Test (SFST) Training Management System* (2001), *available at* http://www.nhtsa.gov/people/injury/alcohol/sfst/introduction.htm (last visited Feb. 10, 2014).

[19]In addition to the two members of the Delaware Supreme Court who dissented in *Lefebvre v. State*, 19 A.3d at 297 (Steele, C.J., and Berger, J., dissenting), the Kansas Court of Appeals has noted that the relationship between successful completion of field sobriety tests and a finding of probable cause is a "contentious issue." *Bixenman v. Kansas Dep't of Revenue*, 307 P.3d 217, 220 (Kan. Ct. App. 2013).

common-sense analysis of the facts and circumstances known to the officers at the time of arrest to determine whether these facts and circumstances are sufficient to permit a reasonable person to believe that the defendant had committed or was committing an offense. Accordingly, we find that performance on field sobriety tests is but one of the many factors officers should consider when deciding whether to arrest a motorist for DUI or similar offenses without a warrant.

## C.

Determinations of probable cause are extremely fact-dependent. *Ker v. California*, 374 U.S. 23, 33 (1963) (noting that because the "standards of reasonableness under the Fourth Amendment are not susceptible of Procrustean application," "[e]ach case is to be decided on its own facts and circumstances"); *see also State v. Garcia*, 123 S.W.3d at 344 (stating that determining whether reasonable suspicion existed is a "fact-intensive" inquiry). Accordingly, we must now examine the facts surrounding Mr. Bell's arrest to determine whether they provided Officer Russell probable cause to arrest him for DUI, notwithstanding his successful performance on the field sobriety tests.

Mr. Bell committed a significant moving violation when he drove the wrong way on a divided highway during the early morning hours of May 13, 2009. Mr. Bell offered an explanation of sorts to Officer Russell, stating that he knew his mistake as soon as he made it, the implication being that it was an innocent mistake. However, like the Alaska Court of Appeals, we recognize that "[i]n dealing with probable cause, . . . we deal with probabilities." *State v. Grier*, 791 P.2d at 631 (quoting *Brinegar v. United States*, 338 U.S. at 175). Thus, Mr. Bell's innocent explanation does not prevent us from finding probable cause for DUI in this case in light of the other circumstances surrounding the arrest. *See State v. Grier*, 791 P.2d at 632 n.3 (stating that probable cause may be established "even though the facts known to the officer could also be reconciled with innocence").

In particular, Mr. Bell smelled of alcohol, and he admitted having consumed "more than [he] should have." Mr. Bell contests the significance of these facts by pointing out that there was no proof of other indicia of intoxication, such as red or watery eyes, unsteadiness, or slurred speech. However, we agree with the Minnesota Court of Appeals that a motorist "need not exhibit every known sign of intoxication in order to support a determination of probable cause." *State v. Grohoski*, 390 N.W.2d at 351; *see also State v. Evetts*, 670 S.W.2d at 641-42 (finding probable cause even though the defendant did not exhibit red or watery eyes, unsteadiness, or slurred speech).

Thus, the record establishes that Mr. Bell was driving on the wrong side of a divided highway late at night, that he smelled of alcohol, and that he admitted having imbibed "more

than [he] should have." These facts clearly support a finding of probable cause for DUI. *See State v. Evetts*, 670 S.W.2d at 642 (finding probable cause where defendant was at fault in a traffic accident and smelled of alcohol, even though he did not exhibit other outward signs of intoxication). Even if Mr. Bell correctly performed the field sobriety tests, we decline to conclude that his performance sufficiently undermines the aforementioned circumstances so as to defeat a finding of probable cause for DUI.[20] As the Delaware Supreme Court has noted, "an individual may pass field tests and still be under the influence of alcohol." *Lefebvre v. State*, 19 A.3d at 296; *see also* National Highway Traffic Safety Administration, *Development of a Standardized Field Sobriety Test (SFST) Training Management System* (2001), *available at* http://www.nhtsa.gov/people/injury/alcohol/sfst/ introduction.htm (last visited Feb. 10, 2014) ("[S]ome experienced drinkers can perform physical and cognitive tests acceptably, even with a BAC greater than 0.10 percent.").

We have considered the totality of the circumstances from the evidence adduced at the suppression hearing. Mr. Bell's significant moving violation, the odor of alcohol, and his admission to drinking "more than [he] should have" were sufficient to permit a prudent person to believe that he was driving under the influence of an intoxicant, even considering successful performance on a battery of field sobriety tests. Therefore, we hold that on May 13, 2009, Officer Russell had probable cause to arrest Mr. Bell without a warrant for operating a motor vehicle while under the influence of an intoxicant.

**IV.**

We reverse the judgments of the Court of Criminal Appeals and the trial court suppressing the results of Mr. Bell's blood alcohol test and dismissing the charges against him. We remand this case to the trial court with directions to reinstate the charges against Mr. Bell and for further proceedings consistent with this opinion. We tax the costs of this appeal to David Dwayne Bell, for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUSTICE

---

[20]Of course, Mr. Bell is free, within the rules of evidence, to use favorable field sobriety performances in a reasonable doubt argument at trial. *See Lefebvre v. State*, 19 A.3d at 295.