N THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs February 18, 2026

**STATE OF TENNESSEE v. DEWAYNE WINSLOW**

**Appeal from the Criminal Court for Knox County**
**No. 127188   Steven W. Sword, Judge**

_____

**No. E2025-00587-CCA-R3-CD**

_____

Defendant, Dewayne Winslow, was convicted by a Knox County jury of possession of more than 0.5 grams of methamphetamine with intent to sell or deliver, possession of a firearm during a dangerous felony, failure to carry vehicle registration, and unlawful possession of a weapon.  The trial court imposed an effective 17-year sentence to be served in confinement.  On appeal, Defendant argues the trial court erred by denying his motion to suppress the narcotics and firearm found in his vehicle and by allowing the State to introduce Defendant's prior drug conviction as evidence of intent.  Upon review of the record, the briefs of the parties, and the applicable law, we  affirm the judgment of the trial court.

 **Tenn R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JILL BARTEE AYERS, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, P.J., and J. ROSS DYER, J., joined.

Mary Ward, Knoxville, Tennessee, for the appellant, Dewayne Winslow.

Jonathan Skrmetti, Attorney General and Reporter; Park Huff, Assistant Attorney General; Charme P. Allen, District Attorney General; and Greg Eshbaugh, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Factual and Procedural Background**

    This case arises from a traffic stop after Defendant failed to stop before entering the roadway.  A passenger in the vehicle had an outstanding warrant for violation of probation

and was taken into custody. While the officer was writing Defendant a citation, a K-9 unit arrived and alerted on the vehicle. During a search of the vehicle, officers found a .380 caliber round of ammunition under the driver seat, a bag containing a loaded firearm, jar containing a leafy green substance believed to be marijuana, a marijuana blunt, and a pill bottle containing a black powdery substance. When Defendant was searched, officers found a clear, rock-like substance believed to be methamphetamine. Defendant was then arrested. On March 20, 2024, a Knox County Grand Jury indicted Defendant for possession of more than 0.5 grams of methamphetamine with intent to sell or deliver (count one), possession of a firearm during a dangerous felony (counts 2 and 5), failure to carry vehicle registration (count three), and unlawful possession of a weapon (count four).

*Suppression Hearing*

Prior to trial, Defendant filed a motion to suppress the narcotics and firearm found in his vehicle and on his person. Defendant contended the search was unlawful because the initial stop was invalid, and the stop was impermissibly delayed in order for the K-9 to arrive. Defendant additionally claimed that any statements he made during the stop were in violation of *Miranda*[1] and, thus, should be suppressed.

At the hearing on the motion, Officer Gordon Johnson of the Knoxville Police Department testified that on December 8, 2023, he observed Defendant leaving a parking lot when he "failed to stop before entering the roadway[,]" in violation of a city ordinance. Officer Johnson then "initiated emergency equipment" and observed Defendant "reach down towards the floorboard and . . . then come up and turn around towards the back, [appearing] to place something in the back seat." Immediately after, the individual "in the backseat went down where we couldn't see them . . . and then popped up."

During the stop, Defendant claimed the vehicle was a rental car, so he was "unable to provide any of the information on the vehicle, including proof of insurance." Officer Johnson collected driver's licenses from Defendant and the two passengers and returned to his vehicle to conduct "NCIC checks on them." Additionally, Officer Johnson "conducted a JIMS[2] history check on [Defendant], to see if he had any criminal history." The JIMS search showed Defendant had a prior felony conviction for the manufacture, delivery, and sale of methamphetamine. Officer Johnson then "requested a K-9" to sniff the vehicle while he worked on the citation. The front seat passenger had an active warrant for violation of probation and was taken into custody. Officer Johnson testified that he believed he was still writing Defendant's citation when the K-9 arrived. His body camera

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).
[2] "JIMS" is not explained or defined in the record, but we believe it is the acronym for Jail Information Management System.

footage was exhibited to his testimony and showed the K-9 search was conducted seventeen minutes into the traffic stop, as Officer Johnson was still writing Defendant's citation.

After Defendant and the remaining passenger were removed from the vehicle, another officer conducted a "free-air sniff" of the vehicle with the K-9. After the K-9 alerted on the vehicle, Officer Johnson conducted a search, finding "a loose .380 round, directly underneath the driver's seat, where [Defendant] was located," and "a pink bag in the back floorboard." The pink bag contained a loaded firearm, "a jar with . . . almost five grams of a green, leafy substance, believed to be marijuana, a marijuana blunt[, and] a pill bottle, belonging to the back passenger, that had a black powdery substance[.]" Defendant was then arrested.

Officer Johnson noticed Defendant "digging in the rear part of his pants" after he received his *Miranda* warnings from another officer. He then "conducted a thorough search" on Defendant, which revealed "a bulge underneath the rear part of his pants . . . [] result[ing] in 12.9 grams of a clear, rock-like substance, believed to be methamphetamine." The traffic stop, in its entirety, lasted approximately twenty-five minutes.

Lexus Fenimore[3], Defendant's girlfriend, testified for Defendant. She said she had noticed the officer following behind their vehicle after Defendant picked her up from a friend's house. The officer followed them to the gas station and then got behind them again when they pulled out of the parking lot. She confirmed when Officer Johnson pulled the vehicle over, Defendant was driving the vehicle, and she was a passenger. The vehicle had been rented by Ms. Fenimore's parents after she wrecked her vehicle. Ms. Fenimore also confirmed she was the owner of the pink purse searched by Officer Johnson. She claimed possession of all the purse's contents, including the marijuana, the black pill bottle and its contents, and the firearm. On cross-examination, Ms. Fenimore denied the methamphetamine found on Defendant's person was hers. Ms. Fenimore agreed that during the search, she could not tell officers the manufacturer or caliber of the gun she claimed was hers, nor whether the gun was loaded.

Following the hearing, the trial court entered a written order denying Defendant's motion to suppress, holding that the search of Defendant's vehicle was valid and not unreasonably delayed:

> In this case, the officer very quickly learned that the defendant did not have proper registration for the car or proof of insurance. Once it was discovered that the passenger had an outstanding warrant, it was reasonable for the

---

[3] Ms. Fenimore is referred to as both Lexus and Lexi in the record.

officer[] to remove the defendant from the car. Any delay in the effectuation of the officer's duty to issue the citation was caused by the defendant's failure to have proper documentation for the car.

In any event, the K-9 arrived and alerted on the car within 20 minutes of the stop before the officer was able to complete the citation. The officer was diligently pursuing the basis of the initial stop until the K-9 indicated that there were illegal drugs in the car. The court finds that there was no unreasonable delay.

The trial court also held the search of the Defendant's person was valid:

Under these facts, the court finds the officer had a particularized suspicion that the defendant may have had another weapon he was trying to conceal in his pants. Beyond that, the court finds that the officer had probable cause that the defendant was possessing additional contraband on his person. As stated above, they had already discovered a gun and drugs in the car. The officer observed the defendant appearing to conceal something in the back of his pants. Thus, the officers were justified in conducting a pat-down of the defendant and search of his person to retrieve the items he was attempting to conceal on his person.

*Trial[4]*

On the morning of the trial, before the jurors were seated, the parties discussed Defendant's prior convictions for possession with intent to sell cocaine and methamphetamine. The State argued the convictions were admissible as the underlying conviction prohibiting Defendant from possessing a firearm. The State also requested to introduce the convictions as relevant for the substantive purpose of proving Defendant's intent to possess methamphetamine to sell or deliver in this case, arguing that the prior convictions were "relatively close in time" and "it does not go to his propensity, Your Honor, but rather to his intent, a lack of mistake, that that is why he possessed those drugs in this case."

Defendant argued the prior convictions had little probative value, would be propensity evidence, and the probative value was "greatly outweighed" by the prejudicial effect.

---

[4] While there was additional proof presented at trial, we have limited our factual recitation to that necessary to address the issues raised by the parties in their briefs.

The trial court ruled that under Rule 404(b), evidence of Defendant's prior felony conviction of possession of methamphetamine with intent to sell or deliver was admissible, but the prior felony conviction for cocaine was inadmissible: "[U]nder that line of cases that talk about prior felony drug convictions to show intent to sell or deliver, on the case before the jury, it does have probative value to a material issue." The trial court also found that the conviction had a "great deal of probative value" because the only defense would be that the drugs were for personal use, and not to sell or deliver. "Because on March 31st of 2023, just five months before this alleged offense date, the defendant admitted before a Court, that a year and half prior to that, he has possessed methamphetamine with the intent to sell or deliver. So that does have substantial probative value towards the material issue." The court then ruled that if the State proved the prior conviction by clear and convincing evidence, it would be admissible. However, the court ruled that Defendant's other prior convictions were excluded under 404(b) as going "too far."

After opening statements and after the jury left the courtroom, the State provided the trial court with the judgment for Defendant's prior felony drug conviction for methamphetamine, and the court found the judgment was "clear and convincing proof of the prior conviction" and that the probative value of the conviction outweighed the danger of unfair prejudice. When the jury returned and the trial resumed, the State entered, without objection, a certified copy of Defendant's prior conviction for "methamphetamine manufacture, delivery, sale, possession with intent, less than half a gram." The trial court advised the jury they could only consider the conviction "for the limited purpose of determining whether it proves the defendant's intent." Further, the trial court specified, "such evidence of another crime, if considered by you for any purpose, must not be considered for any purpose, other than that specifically stated."

Officer Johnson testified consistently with his testimony at the suppression hearing as set forth above. He explained that he called the K-9 officer because he witnessed Defendant's "abnormal behavior." After discovering the marijuana and firearm in the vehicle, Officer Johnson arrested and *Mirandized* Defendant, and upon observing Defendant "digging and moving around erratically" in the back of the police vehicle, he searched Defendant and discovered what was later identified as methamphetamine.

Defendant's girlfriend, Lexus Fenimore, also testified at trial consistently with her testimony at the suppression hearing. Ms. Fenimore confirmed that Defendant was the driver, and she was a passenger. She claimed responsibility for the firearm and the drugs found in the pink bag. On cross-examination, Ms. Fenimore stated the methamphetamine found in the search was not hers. She also admitted that she had never shot the firearm.

Based on the above proof, the jury convicted Defendant as charged of possession of more than 0.5 grams of methamphetamine with intent to sell or deliver, possession of a

firearm during a dangerous felony, failure to carry vehicle registration, and unlawful possession of a weapon. The trial court imposed an effective 17-year sentence to be served in confinement. Defendant filed a timely motion for a new trial, which was denied. Defendant's timely appeal is now before this court.

**Analysis**

I. Denial of Motion to Suppress

Defendant argues that Officer Johnson's traffic stop was pretextual, there was no legitimate basis for the search of the vehicle, and therefore, the trial court erred when it denied his motion to suppress the gun and narcotics found in his vehicle. Defendant additionally claims the traffic stop was unreasonable because the officers lacked probable cause to search the vehicle and because he was "impermissibly delayed" waiting for the K-9 to arrive. The State responds that Officer Johnson's traffic stop was valid because Defendant had committed a traffic violation, the stop did not exceed a reasonable length of time due to the passenger's outstanding warrant, and Officer Johnson had an independent basis for probable cause to conduct a K-9 search based on his personal observation of Defendant's behavior in the vehicle. We agree with the State.

"[A] trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." *State v. Green*, 697 S.W.3d 634, 640 (Tenn. 2024) (quoting *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). Questions about the "credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." *Id.* (quoting *Odom*, 928 S.W.2d at 23). However, "the application of the law to the facts is a question of law that appellate courts review de novo with no presumption of correctness." *Id.* (quoting *State v. Bell*, 429 S.W.3d 524, 529 (Tenn. 2014)); *State v. Echols*, 382 S.W.3d 266, 277 (Tenn. 2012). The party prevailing at the suppression hearing is afforded the "strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." *State v. McKinney*, 669 S.W.3d 753, 764 (Tenn. 2023) (quoting *State v. Talley*, 307 S.W.3d 723, 729 (Tenn. 2010)). Appellate courts may consider the proof adduced both at the suppression hearing and at trial in reviewing the correctness of a trial court's ruling on a pretrial motion to suppress. *Id.*

Both the Fourth Amendment to the United States Constitution and Article I, Section 7 of the Tennessee Constitution protect citizens from unreasonable searches and seizures. U.S. CONST. amend. IV; TENN. CONST. art. 1, § 7. It is well established that Article 1, section 7, is identical in intent and purpose to the Fourth Amendment. *State v. Reynolds*, 504 S.W.3d 283, 312-13 (Tenn. 2016); *State v. McCormick*, 494 S.W.3d 673, 683-84

(Tenn. 2016). "[A] warrantless search or seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997).

Probable cause is more than a mere suspicion but less than absolute certainty." *State v. Tuttle*, 515 S.W.3d 282, 299-300 (Tenn. 2017) (quoting *Reynolds*, 504 S.W.3d at 300). Probable cause determinations are not technical, but instead, "are extremely fact-dependent." *Id.* (quoting *Bell*, 429 S.W.3d at 534). Indeed, the probabilities involved in making a probable cause determination concern "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Id.* (quoting *Brinegar v. United States*, 338 U.S. 160, 175 (1949)).

It is well-established precedent that "subjective intentions play no role in ordinary, probable cause Fourth Amendment analysis." *Whren v. United States*, 517 U.S. 806, 813 (1996). If there is "probable cause to believe [a defendant] violated the traffic code," then "the stop [is] reasonable under the Fourth Amendment. *Id.* at 819; *see State v. Vineyard*, 958 S.W.2d 730, 735-36 (Tenn. 1997) ("[P]retext is not the determinative factor in evaluating the constitutionality of a traffic stop . . . despite the police officer's subjective motivations, this Court upheld the constitutional validity of the stop which was based upon the probable cause that the defendant had violated the traffic code."); *see State v. Berrios*, 235 S.W.3d 99, 105 (Tenn. 2007) ("Because the Defendant was driving eight miles per hour over the posted limit, Officer Nichols had probable cause to initiate a traffic stop.").

"The 'automobile exception' to the warrant requirement permits an officer to search an automobile if the officer has probable cause to believe that the automobile contains contraband." *State v. Saine*, 297 S.W.3d 199, 207 (Tenn. 2009); *see Carroll v. United States*, 267 U.S. 132, 149 (1925). The rationale for the automobile exception is two-fold: (1) the impracticability of obtaining a search warrant in light of the inherent mobility of an automobile; and (2) the reduced expectation of privacy with respect to one's automobile. *California v. Carney*, 471 U.S. 386, 390-93 (1985); *South Dakota v. Opperman*, 428 U.S. 364, 367 (1976). If the police have probable cause to believe that an automobile contains contraband, the officers may either seize the vehicle and then obtain a warrant or search the vehicle immediately. *Chambers v. Maroney*, 399 U.S. 42, 52 (1970). "[T]he right to search and the validity of the seizure are not dependent on the right to arrest. They are dependent on the reasonable cause the seizing officer has for belief that the contents of the automobile offend against the law." *Reagan v. State*, 525 S.W.2d 683, 686 (Tenn. Crim. App. 1974) (citing *Maroney*, 399 U.S. at 49). "Given probable cause to search, either course is reasonable under the Fourth Amendment." *Maroney*, 399 U.S. at 52.

Our supreme court has held that "a positive alert from a drug-sniffing canine" should be "considered in a totality-of-the-circumstances analysis" and may "contribute to a probable cause determination." *Green*, 697 S.W.3d at 642; *see State v. Green*, M2022-00899-CCA-R3-CD, 2023 WL 3944057, at *3 (Tenn. Crim. App. June 12, 2023) (finding the legal analysis the same whether the smell of marijuana was detected by an officer or a drug canine), *aff'd*, 697 S.W.3d 634. The court pointed out that these alerts give "rise to a high probability that a controlled substance is in the car." *Green*, 697 S.W.3d at 644 (internal quotations and alterations omitted). The court concluded that the "ultimate question" is "whether all the facts surrounding a dog's alert, viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime." *Id.* (quoting *Florida v. Harris*, 568 U.S. 237, 248 (2013)).

Defendant contends that because the traffic stop was pretextual, there was not a legitimate basis for the search. Ms. Fenimore testified she noticed the officer following them long before Officer Johnson pulled them over; however, there was no other evidence to suggest that Officer Johnson delayed stopping Defendant after the driving infraction. And in any event, pretextual stops are permitted under Fourth Amendment jurisprudence so long as the officer had objective, probable cause to believe a traffic offense was committed. Here, Officer Johnson observed that Defendant's vehicle failed to come to a complete stop before entering the roadway in violation of Knoxville City Ordinance 17-179. Because Officer Johnson pulled Defendant over after observing Defendant commit a traffic offense, the traffic stop was valid as a matter of law.

When Officer Johnson ran the NCIC and JIMS check on the occupants of the vehicle, he learned a passenger had an outstanding warrant for a violation of probation and Defendant had prior drug convictions. Officer Johnson then called for a K-9 unit based upon his personal observations of Defendant's "abnormal behavior," and the passenger's active warrant. The K-9's positive alert in addition to Officer Johnson's other observations supports a finding of probable cause under *Green*. This probable cause, together with the fact that the search involved a vehicle, brings the search within the automobile exception.

The facts also support the trial court's ruling that the duration of the traffic stop was reasonable. Generally, courts have emphasized "the need to consider the law enforcement purposes to be served by the stop as well as the time reasonably needed to effectuate those purposes." *United States v. Sharpe*, 470 U.S. 675, 685 (1985) (internal citations omitted); *see State v. Simpson*, 968 S.W.2d 776, 784 (1998) (holding that a vehicle search was reasonable because "the police diligently pursued a means of investigation that was likely to dispel or confirm their suspicions quickly"). While there is no "bright line rule" for a delay's reasonableness, our supreme court has explicitly determined that a fifteen-minute

delay while waiting for investigative back-up during a traffic stop does not exceed the "proper parameters." *State v. Montgomery*, 462 S.W.3d 482 (Tenn. 2015).

Here, the entire traffic stop, including the K-9 search, lasted approximately twenty-five minutes; the record does not support Defendant's claim that the stop was "unreasonably delayed." After Defendant failed to provide the vehicle's registration, Officer Johnson checked NCIC and JIMS for information on all the vehicle's occupants. While Officer Johnson was writing Defendant's citation, he called for the K-9 unit's assistance. When the JIMS results revealed a passenger had an outstanding warrant, the purpose of the stop evolved beyond issuing a traffic citation and the passenger was taken into custody. The K-9 unit arrived while Officer Johnson was working on the citation and once the K-9 alerted, the vehicle was promptly searched. Immediately following the search, Defendant was arrested.

The record supports the trial court's determination that the totality of the circumstances supported probable cause for the search of the vehicle and that the duration of the stop was not unreasonable. Defendant is not entitled to relief.

## II. Admission of Prior Bad Acts

Defendant contends the trial court erred by allowing the State to introduce evidence of his prior conviction for possession of methamphetamine with intent to sell or deliver. The State argues the trial court substantially complied with the procedures of Rule 404(b) and properly admitted the evidence. We agree with the State.

Trial courts "have broad discretion in determining the admissibility of evidence, and their rulings will not be reversed absent an abuse of that discretion." *State v. McLeod*, 937 S.W.2d 867, 871 (Tenn. 1996). Tennessee Rule of Evidence 404(b) permits the admission of evidence of criminal conduct if the evidence is relevant to a litigated issue such as identity, intent, or rebuttal of accident or mistake, and the probative value outweighs the danger of unfair prejudice. Tenn. R. Evid. 404(b) Advisory Comm'n Cmt.; *see State v. Parton*, 694 S.W.2d 299, 303 (Tenn. 1985); *State v. Hooten*, 735 S.W.2d 823, 824 (Tenn. Crim. App. 1987). However, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait." Tenn. R. Evid. 404(b).

Rule 404(b) is "one of exclusion," but evidence of other crimes, wrongs, or acts may be admitted for non-propensity purposes provided the court: (1) holds a jury-out hearing; (2) identifies a material issue other than conduct conforming with a character trait and states its reasons on the record; (3) finds clear and convincing proof of the other act; and (4) determines that the probative value is not outweighed by the danger of unfair prejudice.

See Tenn. R. Evid. 404(b); *State v. DuBose*, 953 S.W.2d 649, 652 (Tenn. 1997); *State v. Sexton*, 368 S.W.3d 371, 402-04 (Tenn. 2012). In reviewing a trial court's decision to admit or exclude evidence under Rule 404, an appellate court may disturb the trial court's ruling only if there has been an abuse of discretion. *State v. Thacker*, 164 S.W.3d 208, 240 (Tenn. 2005). The trial court's determination is entitled to deference when it has substantially complied with the procedural requisites of Rule 404(b). *DuBose*, 953 S.W.2d at 652.

As noted by the trial court in its ruling because Defendant argued that the drugs found on his person were for personal use, and not for sale or distribution as the State claimed, his intent was a central element. "When the presence or absence of a particular intent which is necessary to constitute the crime charged is a contested issue, and evidence of a prior crime tends to show that intent, it may render the prior crime admissible." *Parton*, 694 S.W.2d at 303 (citing *Mays v. State*, 145 Tenn. 118, 141 (1921)). This court has consistently upheld the admission of prior convictions for the sale of drugs to establish intent or to rebut claims of casual exchange or personal use when Rule 404(b)'s procedure is strictly followed. *See*, *State v. Little*, 854 S.W.2d 643, 649 (Tenn. Crim. App. 1992) (holding that evidence of the defendant's prior drug transactions was admissible to show intent to sell drugs and rebut the defendant's contention that he was "a victim of circumstance"); *State v. Clay*, No. W2009-02314-CCA-R3-CD, 2011 WL 890914, at *8 (Tenn. Crim. App. Mar. 15, 2011) (finding no abuse of discretion when the trial court admitted evidence of the defendant's prior convictions for the sale of cocaine to rebut the defendant's assertion that he was only a drug user and to show his intent); *State v. Giddens*, No. M2002-00163-CCA-R3-CD, 2004 WL 2636715, at *3 (Tenn. Crim. App. Nov. 15, 2004) (finding no error in admitting witness testimony where evidence of prior drug sales indicated an intent on the part of the defendant to sell the drugs he possessed); *State v. Jones*, No. M2017-01666-CCA-R3-CD, 2020 WL 2079270 (Tenn. Crim. App. Apr. 30, 2020) (noting that "evidence of prior drug sales is probative of the defendant's knowledge and intent to possess drugs for resale" and that a limiting instruction reduced any prejudicial effect).

In this case, after a jury-out hearing, the trial court found the prior conviction for methamphetamine was material to prove intent but that Defendant's other prior convictions were immaterial. The trial court found proof of the prior conviction was clear and convincing based on certified copies of the judgment. The trial court also found that the probative value of the evidence outweighed any prejudicial effect and to that end provided thorough limiting instructions to the jury in order to mitigate the risk of unfair prejudice. Jurors are presumed to follow the court's instructions. See *State v. Inlow*, 52 S.W.3d 101, 106 (Tenn. Crim. App. 2000).

Because the trial court substantially complied with the requirements of Rule 404(b), made the necessary findings, and reached a decision that was neither illogical nor unreasonable, we conclude there was no abuse of discretion in admitting Defendant's prior felony drug conviction for possession of methamphetamine with intent to sell or distribute for the limited purpose of proving intent. Defendant is not entitled to relief.

## CONCLUSION

Based on the foregoing reasons, the judgments of the trial court are affirmed.

s/*Jill Bartee Ayers*

JILL BARTEE AYERS, JUDGE