# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### September 1, 2015 Session

## STATE OF TENNESSEE v. A.D. SMITH III

### Appeal from the Criminal Court for Shelby County
### No. 1301710     Glenn Ivy Wright, Judge

_____

### No. W2015-00133-CCA-R9-CD  -  Filed December 15, 2015

_____

Defendant, A.D. Smith III, was arrested for driving under the influence ("DUI") in Shelby County.  Based on his prior conviction for DUI, Defendant was informed that he was subject to a mandatory blood draw under Tennessee's implied consent law. Defendant filed a motion to suppress, arguing that his consent was not freely and voluntarily given.  The trial court granted the motion to suppress, and the State filed for an interlocutory appeal.  Upon our review of the record, arguments, and authorities, we conclude that the trial court erred in finding that Defendant's consent was not voluntary. Therefore, we reverse the decision of the trial court and remand the case for further proceedings in accordance with this opinion.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Criminal Court Reversed and Remanded**

TIMOTHY L. EASTER, J., delivered the opinion of the Court, in which ROGER A. PAGE, J., joined. JOHN EVERETT WILLIAMS, J., filed a separate dissenting opinion.

Herbert H. Slatery III, Attorney General and Reporter; Rachel E. Willis, Senior Counsel; Amy P. Weirich, District Attorney General; and Stephanie Johnson, Assistant District Attorney General, for the appellant, State of Tennessee.

André C. Wharton, Memphis, Tennessee, for the appellee, A.D. Smith III.

## OPINION

This is the State's interlocutory appeal from the Criminal Court of Shelby County's granting Defendant's motion to suppress the results of blood evidence obtained without a search warrant during Defendant's DUI arrest.

*Factual and Procedural Background*

Defendant was indicted by the Shelby County Grand Jury of one count of DUI, one count of DUI per se, and one count of reckless driving. On August 30, 2013, Defendant filed a motion to suppress. At the subsequent hearing on the motion, the following facts were adduced:

Officer Marcus Everett of the Memphis Police Department testified that around three o'clock in the morning on August 2, 2012, he saw Defendant's vehicle stopped in the right lane near the intersection of Winchester and Riverdale. Defendant's car was approximately two car lengths away from the intersection. The light turned green, and Defendant's vehicle did not move. It appeared to Officer Everett that Defendant was asleep at the wheel. Officer Everett pulled in behind Defendant's vehicle and approached to see if everything was alright. Defendant's vehicle was in drive, so Officer Everett reached in through the open window and put the car in park. At that point, Defendant woke up. Defendant's speech was very slurred and he had a strong odor of intoxicants coming from his person. Officer Everett asked Defendant to step out of the vehicle. Defendant was unsteady, stumbling, "barely able to keep his balance." Officer Everett placed Defendant into custody under suspicion of DUI.

Officer Everett then called for a "whiskey unit," a DUI officer, to come to the scene. Officer Everett also determined that Defendant had a prior conviction for DUI. Officer Everett transported Defendant to the police station for a mandatory blood draw. Officer Everett described Defendant's demeanor during the trip as calm. At the police station, Officer Everett removed the handcuffs from behind Defendant's back and handcuffed one of his arms to a chair. Officer Everett filled out part of the implied consent form with Defendant's information but did not go over the form with Defendant. Officer Everett described Defendant as willing to submit to the blood test, explaining that he never refused or withdrew consent to the test.

Officer Marvin Richardson was assigned to the DUI unit and responded to the scene on August 2, 2012. Officer Everett already had Defendant under arrest for DUI. Officer Richardson observed that Defendant had bloodshot, watery eyes and an odor of intoxicants. Based on Defendant's prior conviction for DUI, Officer Richardson determined that the law at that time permitted the Defendant to be subject to a mandatory blood draw. He explained that this meant the Defendant's blood would be taken even if he refused the test.

Officer Richardson went to the police station to conduct the blood test. Officer Richardson read the implied consent form to Defendant and advised him that the blood draw was mandatory because of his prior conviction for DUI. Officer Richardson asked

if Defendant wanted to consent to the test, and Defendant "decided to consent to a blood test." Officer Richardson described Defendant as calm and cooperative, stating that he "readily gave up the blood." A nurse came to the police station to draw Defendant's blood approximately an hour and fifteen minutes after Defendant's arrest.

Officer Richardson explained that if Defendant had refused the blood test, he would have been charged with a violation of the implied consent law and his blood would have been taken anyway pursuant to the statute at the time. On cross-examination, Officer Richardson explained that the law has since changed and that he would now obtain a search warrant in the case of a refusal. Officer Richardson explained that Defendant had a right to refuse the test and that he gave Defendant that option. The implied consent form outlines the consequences of refusing to submit to the test. Officer Richardson checked the box on the implied consent form indicating a mandatory blood draw, but he forgot to check the box indicating either Defendant's consent or refusal. Officer Richardson explained this oversight as "clerical error." Officer Richardson did not have Defendant sign the form because the implied consent form used at that time did not have a signature block.

Defendant testified that when Officer Everett ran his information, he determined that the Defendant had outstanding warrants. Defendant tried to explain that the warrants were actually for his brother. According to Defendant, Officer Everett told him, "Well, warrants or DUI you're going down for something," and told him to "shut up." Officer Everett then turned up the radio; it was playing Gospel music. Defendant was not offered any field sobriety tests.

Defendant testified that when Officer Richardson arrived at the scene, he did not say anything about Defendant being subjected to a mandatory blood draw. At the police station, Defendant testified that Officer Richardson did not go over the implied consent form with him or explain that he could refuse the test. Defendant testified that he felt like he did not have any options. According to Defendant, he tried to explain himself, but he was yelled at and told to shut up. Defendant testified that he never told the officers that they could take his blood.

On cross-examination, Defendant testified that while at the intersection, he just "clos[ed] his eyes for a second," and the next thing he remembered was the officer reaching in to put his vehicle in park. Defendant testified that Officer Everett yelled at him and told him to shut up while at the scene, but neither officer yelled at him or threatened him when they got to the police station. Defendant testified that he was told he was under arrest for DUI and that his blood would be taken, but that no one read the implied consent form to him. Defendant did not say anything to either officer or attempt to resist when the nurse drew his blood. Defendant testified that the officers did not say that if he refused consent, they would take his blood anyway.

- 3 -

After the hearing, the trial court issued a written order on December 1, 2014, granting Defendant's motion to suppress. The trial court rejected Defendant's contention that the mandatory blood draw provisions are unconstitutional, citing *State v. Charles A. Kennedy* for the proposition that the legislature did not intend to dispense with the warrant requirement. *See* No. M2013-02207-CCA-R9-CD, 2014 WL 4953586, at *12 (Tenn. Crim. App. Oct. 3, 2014), *no perm. app. filed*. The trial court found that Defendant's consent to the blood draw was not freely and voluntarily given under the totality of the circumstances and that the State could not rely on the implied consent statute to establish voluntary consent. The State filed an application for permission for an interlocutory appeal pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure, which was granted by the trial court on January 13, 2015, and by this Court on April 10, 2015.

*Analysis*

In reviewing a trial court's ruling on a motion to suppress, this Court will uphold the trial court's findings of fact "unless the evidence preponderates otherwise." *State v. Bell*, 429 S.W.3d 524, 528 (Tenn. 2014) (citing *State v. Climer*, 400 S.W.3d 537, 556 (Tenn. 2013)). Witness credibility, the weight and value of the proof, and the resolution of conflicts in the proof "are matters entrusted to the trial court as the trier of fact." *Id*. at 529; *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). The prevailing party "is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." *Bell*, 429 S.W.3d at 529. "However, while deference is due the trial court with respect to findings of fact, the application of the law to the facts is a question of law that appellate courts review de novo with no presumption of correctness." *Id*.

Both the Fourth Amendment to the United States Constitution and Article I, section 7 of the Tennessee Constitution guarantee the right to be free from unreasonable searches and seizures. Tennessee's constitutional protections regarding searches and seizures are identical in intent and purpose to those in the federal constitution. *State v. Turner*, 297 S.W.3d 155, 165 (Tenn. 2009). A blood draw conducted at the behest of a law enforcement officer for law enforcement purposes is a search subject to constitutional protection. *Missouri v. McNeely*, -- U.S. --, 133 S.Ct. 1552, 1558 (2013); *Schmerber v. California*, 384 U.S. 757, 770 (1966); *State v. Scarborough*, 201 S.W.3d 607, 616 (Tenn. 2006).

In evaluating the constitutionality of warrantless searches, this Court must "evaluate the search or seizure under traditional standards of reasonableness" by

balancing an individual's privacy interests against legitimate governmental interests.[1] *Wyoming v. Houghton*, 526 U.S. 295, 300 (1999). "[A] warrantless search or seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." *State v. Yeargan*, 958 S.W.2d 626, 630 (Tenn. 1997). Some of these recognized exceptions include search incident to arrest, plain view, search under exigent circumstances, and consent to search. *State v. Talley*, 307 S.W.3d 723, 729 (Tenn. 2010) (citing *State v. Cox*, 171 S.W.3d 174, 179 (Tenn. 2005)). The State has the burden to demonstrate, by a preponderance of the evidence, that a warrantless search passes constitutional muster. *State v. Harris*, 280 S.W.3d 832, 839 (Tenn. Crim. App. 2008).

The issue in this case is whether Defendant consented to having his blood drawn, either through actual consent or under the implied consent statute. *See* T.C.A. § 55-10-406. As stated above, consent is a recognized exception to the warrant requirement. *Florida v. Bostick*, 501 U.S. 429, 438 (1991); *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973); *Talley*, 307 S.W.3d at 729. To be valid, consent "must be 'unequivocal, specific, intelligently given, and uncontaminated by duress or coercion.'" *State v. Ingram*, 331 S.W.3d 746, 760 (Tenn. 2011) (quoting *State v. Berrios*, 235 S.W.3d 99, 104 (Tenn. 2007)). The individual's will cannot have been overborne; instead the consent must be the product of a free and unconstrained choice. *Cox*, 171 S.W.3d at 185. "Whether an individual voluntarily consents to a search is a question of fact to be determined from the totality of the circumstances." *Berrios*, 235 S.W.3d at 109; *Scarborough*, 201 S.W.3d at 623. Factors relevant to evaluating the voluntariness of a suspect's consent include the suspect's awareness of his right to refuse consent; his age, education, and intelligence; and whether he was injured or intoxicated. *See State v. Waylon D. Knott*, No. M2000-02524-CCA-R3-CD, 2001 WL 846031, at *3 (Tenn. Crim. App. July 27, 2001) (citing *State v. Carter*, 16 S.W.3d 762, 769 (Tenn. 2000)); *United States v. Ivy*, 165 F.3d 397, 402 (6th Cir. 1998)), *no perm. app. filed*. "The burden is on the prosecution to prove that the consent was given freely and voluntarily." *State v. Blackwood*, 713 S.W.2d 677, 680 (Tenn. Crim. App. 1986).

The statutorily created implied consent satisfies the consent exception to the Fourth Amendment's warrant requirement. *See State v. Humphreys*, 70 S.W.3d 752, 761 (Tenn. Crim. App. 2001); *State v. Corrin Kathleen Reynolds*, No. E2013-02309-CCA-R9-CD, 2014 WL 5840567, at *11 (Tenn. Crim. App. Nov. 12, 2014), *perm. app. granted* (Tenn. Mar. 16, 2015). Under Tennessee law, anyone who exercises the privilege of operating a motor vehicle on the public roadways "is deemed to have given

---

[1] We note that the State has a legitimate, substantial, and compelling interest in preventing drunk driving. *See State v. James Dean Wells*, No. M2013-01145-CCA-R9-CD, 2014 WL 4977356, at *13 (Tenn. Crim. App. Oct. 6, 2014), *no perm. app. filed*.

consent to a test or tests for the purpose of determining the alcoholic content of that person's blood." T.C.A. § 55-10-406(a)(1) (2012)[2]; *see Humphreys*, 70 S.W.3d at 761 (reasoning that "anyone who exercises the privilege of operating a motor vehicle in this state has consented in advance to submit to a breath [or blood] alcohol test"). The statute further provides that a driver may generally refuse consent to a blood alcohol test and be subject to a violation of the implied consent law. T.C.A. § 55-10-406(a)(4)(A) (2012). However, the statute also delineates certain exceptions to the statutory right to refuse consent, including when an officer has probable cause to believe that the driver was driving under the influence and had previously been convicted of DUI. *See* T.C.A. § 55-10-406(f)(2) (2012) (stating that "the officer shall cause the driver to be tested for the purpose of determining the alcohol or drug content of the driver's blood" and that the test "shall be performed regardless of whether the driver does or does not consent to the test"). As this Court has explained, "if probable cause exists to believe that (1) the suspect motorist has consumed intoxicating liquor and (2) evidence of the motorist's intoxication will be found if the blood is tested, it is unnecessary for law enforcement officers to obtain the voluntary consent of an individual motorist before administering a breath [or blood] test for alcohol concentration level." *Humphreys*, 70 S.W.3d at 761 (internal citations omitted).

Recently, this Court has held that "consent occurs at the point that a driver undertakes the privilege of operating a motor vehicle in the State of Tennessee, not at the point the implied consent form is read." *State v. Darryl Alan Walker*, No. E2013-01914-CCA-R3-CD, 2014 WL 3888250, at *6 (Tenn. Crim. App. Aug. 8, 2014), *no perm. app. filed*; *see also Humphreys*, 70 S.W.3d at 752 (holding that "voluntary consent is unnecessary as consent has already been obtained by the act of driving the motor vehicle upon the public roads of this state"); *but see James Dean Wells*, 2014 WL 4977356, at *13 (holding that when a driver refuses consent, "the privilege of driving does not alone create consent for a forcible blood draw"). "Generally, once consent has been given, it is effective until it is withdrawn or revoked." *Corrin Kathleen Reynolds*, 2014 WL 5840567, at *11 (citing *Cox*, 171 S.W.3d at 186 n.11; *State v. Eddie Leroy Rowlett*, No. M2011-00485-CCA-R3-CD, 2013 WL 749502, at *13 (Tenn. Crim. App. Feb. 26, 2013), *no perm. app. filed*).

Additionally, this Court has recently held that a defendant's consent is not "rendered involuntary by the threat of a mandatory blood draw." *State v. Patrick Lee Mitchell*, No. M2014-01129-CCA-R3-CD, 2015 WL 2453095, at *4 (Tenn. Crim. App. May 22, 2015) (concluding that informing a defendant that he would be subjected to a mandatory blood draw is not a "baseless threat," even if the officer would have to obtain a warrant if the driver refused), *no perm. app. filed*. Other jurisdictions have similarly

---

[2] The implied consent statute has since been amended and some of the subsections have been renumbered. For clarity, we shall refer to the statute as it existed at the time of Defendant's arrest.

held that advising a driver of the consequences of refusing a chemical test under the implied consent law does not render the subsequent consent involuntary. In *People v. Harris*, the California Court of Appeals has held "that free and voluntary submission to a blood test, after receiving an advisement under the implied consent law, constitutes actual consent to a blood draw under the Fourth Amendment." 184 Cal. Rptr. 3d 198, 209 (Ct. App. 2015), *review denied* (June 10, 2015). "The fact that a motorist is told he will face serious consequences if he refuses to submit to a blood test does not, in itself, mean that his submission was coerced." *Id.* at 211 (citing *South Dakota v. Neville*, 459 U.S. 553 (1983)).[3] In *State v. Moore*, the Oregon Supreme Court reasoned as follows:

> [I]t is difficult to see why the disclosure of accurate information about a particular penalty that may be imposed—if it is permissible for the state to impose that penalty—could be unconstitutionally coercive. Rather, advising a defendant of the lawful consequences that may flow from his or her decision to engage in a certain behavior ensures that that defendant makes an informed choice whether to engage in that behavior or not. Indeed, the failure to disclose accurate information regarding the potential legal consequences of certain behavior would seem to be a more logical basis for a defendant to assert that his or her decision to engage in that behavior was coerced and involuntary. Of course, accurately advising a defendant of a lawful penalty that could be imposed may well play a role in the defendant's decision to engage in the particular behavior, but that does not mean that the defendant's decision was "involuntary."

318 P.3d 1133, 1138 (Or. 2013). In *State v. Brooks*, the Minnesota Supreme Court concluded that "a driver's decision to agree to take a [chemical] test is not coerced" solely because that state's implied consent law imposes criminal penalties for refusing to comply. 838 N.W.2d 563, 570 (Minn. 2013); *see also State v. Padley*, 849 N.W.2d 867, 879 (Wis. Ct. App. May 22, 2014) (noting that, under the implied consent law, a driver may choose to give a blood sample and thereby give actual consent or may choose to withdraw consent, which is an unlawful act penalized by license revocation).

Defendant argues that the United States Supreme Court decision in *Missouri v. McNeely* invalidates the use of implied consent statutes to justify a warrantless blood draw. *See* 133 S. Ct. at 1561 ("In those drunk-driving investigations where police officers can reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search, the Fourth Amendment mandates

---

[3] In *Neville*, the United State Supreme Court examined an implied consent statute—including the fact that refusal of consent could be used against the defendant at trial—under the Fifth Amendment protection against self-incrimination. 459 U.S. at 554. The Court concluded that although "the choice to submit or refuse to take a blood-alcohol test will not be an easy or pleasant one for a suspect to make," the difficulty of the decision does not mean that the motorist's ultimate choice is coerced. *Id.* at 564.

that they do so."). However, the *McNeely* Court specifically limited its ruling to an analysis of the exigent circumstances exception to the warrant requirement and whether the natural dissipation of alcohol in the bloodstream creates a *per se* exigency. *Id*. at 1568 ("Because this case was argued on the broad proposition that drunk-driving cases present a per se exigency, the arguments and the record do not provide the Court with an adequate analytic framework for a detailed discussion of all the relevant factors that can be taken into account in determining the reasonableness of acting without a warrant."). Additionally, the plurality opinion in *McNeely* identified implied consent statutes favorably as one of a "broad range of legal tools" that States have "to enforce their drunk-driving laws and to secure [blood alcohol content] evidence without undertaking warrantless nonconsensual blood draws." *Id.* at 1566 (Sotomayor, J., plur. op.).[4] Thus, *McNeely* indicates that implied consent withstands Fourth Amendment scrutiny, at least so long as the driver does not withdraw or revoke consent. *But see Aviles v. State*, 443 S.W.3d 291, 294 (Tex. App. Aug. 6, 2014) (concluding that "the [implied consent] statutes were not substitutes for a warrant or legal exceptions to the Fourth Amendment warrant requirement" in light of the *McNeely* decision).

In this case, the evidence preponderates against the trial court's finding that Defendant did not voluntarily consent to the blood draw under the totality of the circumstances. Officer Richardson testified that he informed Defendant that he was subject to a mandatory blood draw because of his prior DUI conviction. Officer Richardson testified that he read Defendant the implied consent form and "asked him if [he] wanted to consent to a chemical test." According to Officer Richardson, Defendant "decided to consent to a blood test" and cooperated with the blood draw. Officer Everett described Defendant as calm and willing to submit to the blood test. Based on Defendant's prior conviction for DUI, it cannot be said that he was unfamiliar with the legal system and the implied consent law. Defendant agreed that he submitted to the blood draw without protest; however, he testified that he thought he had no other option, claiming that Officer Richardson never read him the implied consent form.

The trial court accredited the testimony of Officer Richardson that he read the implied consent form to Defendant, thereby informing Defendant of his right to refuse consent and the consequences of a refusal. However, the trial court based its conclusion that Defendant did not voluntarily consent to the blood draw on the fact that Officer Richardson told the Defendant that the blood draw was mandatory, "giving the impression to Defendant that [he] had no choice but to submit to the testing." However, as stated above, a defendant's consent is not "rendered involuntary by the threat of a

---

[4] In his concurring opinion, Justice Kennedy explained that he did not join this portion of the lead opinion because "the instant case, by reason of the way in which it was presented and decided in the state courts, does not provide a framework where it is prudent to hold any more than that always dispensing with a warrant for a blood test when a driver is arrested for being under the influence of alcohol is inconsistent with the Fourth Amendment." *McNeely*, 133 S.Ct. at 1569 (Kennedy, J., concurring in part).

mandatory blood draw" or the loss of driving privileges. *Patrick Lee Mitchell*, 2015 WL 2453095, at \*4. Additionally, we do not find Defendant's testimony that he was "yelled at" and "subjected to loud Gospel music" when he tried to "explain himself" with regard to outstanding warrants, all of which supposedly occurred before Officer Richardson ever arrived on the scene, amounts to evidence of coercion or intimidation. *See id.* (finding that the defendant's testimony that he felt "pressured" and "nervous" did not amount to showing that his consent was coerced). Therefore, we conclude in this case that the trial court erred in finding that Defendant's consent was not voluntary under the totality of the circumstances.

This case is easily distinguishable from cases involving forcible, non-consensual blood draws. *See State v. James K. Gardner*, No. E2014-00310-CCA-R3-CD, 2014 WL 5840551, at \*5 (Tenn. Crim. App. Nov. 12, 2014), *no perm. app. filed*[5]; *James Dean Wells*, 2014 WL 4977356, at \*1; *Charles A. Kennedy*, 2014 WL 4953586, at \*2. In each of those cases, the defendant clearly revoked or withdrew his consent when he refused the blood draw. This case is more analogous with *Patrick Lee Mitchell*, 2015 WL 2453095, at \*4, *Corrin Kathleen Reynolds*, 2014 WL 5840567, at \*11, and *Darryl Alan Walker*, 2014 WL 3888250, at \*6. In each of those cases, the warrantless blood draw was held to be constitutional because the defendant never expressly withdrew or revoked consent. In *Darryl Alan Walker*, this Court concluded that because there was no evidence that the defendant refused to submit to the test, that his "implied consent remained valid, and his contention that his consent was involuntary [was] without merit." 2014 WL 3888250, at \*6. In *Corrin Kathleen Reynolds*, this Court concluded that even though the defendant was not able to give actual consent due to the medications she had been given at the hospital, she never revoked or withdrew her implied consent. 2014 WL 5840567, at \*9-11; *but see State v. Micah Alexander Cates*, No. E2014-01322-CCA-R3-CD, 2015 WL 5679825, at \*8 (Tenn. Crim. App. Sept. 28, 2015) (declining to address the State's argument that the defendant never withdrew his implied consent as being raised for the first time on appeal). In this case, because Defendant actually consented to the blood draw and never expressly revoked his implied consent, Officer Richardson was authorized by the implied consent statute to take Defendant's blood without a warrant.

---

[5] We note that in *James K. Gardner*, the trial court found that, despite being read the implied consent form and informed of the right to refuse consent, the defendant's consent was not voluntary because he "didn't have much of a choice" in light of the mandatory blood draw. 2014 WL 5840551, at \*5. However, the certified question presented on appeal was "[w]hether exigent circumstances existed which justified an exception to the Fourth Amendment's search warrant requirement for the *nonconsensual* blood testing of the defendant?" *Id.* (emphasis added). Therefore, this Court did not have jurisdiction to consider whether the mandatory nature of the blood draw actually rendered the defendant's consent involuntary. *See State v. Day*, 263 S.W.3d 891, 899 (Tenn. 2008) (quoting *State v. Preston*, 759 S.W.2d 647, 650 (Tenn. 1988)) (noting that the "question of law must be stated so as to clearly identify the scope and the limits of the legal issue reserved . . . [and] *[n]o issue beyond the scope of the certified question will be considered.*") (alteration and emphasis added in *Day*).

*Conclusion*

Based on the foregoing, we reverse the decision of the trial court granting Defendant's motion to suppress. We remand this case for further proceedings in accordance with this opinion.

_____
TIMOTHY L. EASTER, JUDGE