IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 17, 2019

## COREY GILBERT v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Montgomery County**
**No. 40901308        William R. Goodman III, Judge**

_____

## No. M2017-02071-CCA-R3-PC

_____

After his convictions for felony murder and aggravated robbery were upheld on direct appeal, Petitioner, Corey Gilbert, sought post-conviction relief. In the petition for post-conviction relief, Petitioner alleged ineffective assistance of trial counsel and appellate counsel as well as prosecutorial misconduct. After a hearing, the post-conviction court denied relief. We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROBERT L. HOLLOWAY, JR., JJ., joined.

Patrick McNally, Nashville, Tennessee (at post-conviction hearing), and Allan Thompson, Clarksville, Tennessee (on appeal), for the appellant, Corey Demoris Gilbert.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Senior Assistant Attorney General; John W. Carney, Jr., District Attorney General; and Robert Nash, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual Background

Petitioner was convicted of felony murder and attempted aggravated robbery for his role in the shooting death of George Labront Miller in July of 2009 at the A&W Motel. *State v. Corey D. Gilbert*, No. M2012-01231-CCA-R3-CD, 2013 WL 2643164, at *1 (Tenn. Crim. App. June 11, 2013), *perm. app. denied* (Tenn. Oct. 16, 2013). The proof at trial came primarily from one of the codefendants, Shawntay Evans, who

established that a total of four individuals, including Petitioner, "made a plan to rob" the victim. *Id.* at *1-2. Petitioner's statement to police was introduced during trial. *Id.* at *6. In the statement, he admitted that there was a "plan to rob somebody" at the motel. When they arrived at the motel room, Defendant "couldn't tell what was happening" because he remained directly outside the room and there was "a lot of noise and then a gunshot." *Id.* Petitioner denied shooting a gun but admitted that he possessed a .22 caliber handgun during the incident. *Id.* There was also proof at trial from an eyewitness who was able to identify Petitioner and testimony regarding DNA evidence that linked Petitioner to the crime. *Id.* at *1, *3. Petitioner is serving an effective life sentence as a result of his convictions. *Id.* at *1. On direct appeal, this Court reviewed only the sufficiency of the evidence, determining that the evidence was sufficient to support the convictions. *Id.*

In October of 2014, Petitioner filed, with the assistance of counsel, a petition for post-conviction relief in which he argued that he received ineffective assistance of trial counsel and appellate counsel. The petition was based on multiple instances of allegedly ineffective performance, including, inter alia, failure to adequately investigate the case, failure to interview witnesses, failure to develop a theory of defense, failure to make timely objections and motions, failure to call witnesses at trial, failure to properly cross-examine witnesses, failure to negotiate a settlement, failure to preserve issues for appeal, and failure to raise issues on appeal. Petitioner also alleged that the State failed to disclose favorable evidence prior to trial. In December of 2016, a "Supplement To Petition for Post-Conviction Relief" was filed that raised additional allegations of ineffective assistance of counsel and argued that prosecutorial misconduct occurred during closing argument at trial.

*Post-conviction Hearing*

At the post-conviction hearing, Petitioner explained that his mother hired a lawyer to represent him at trial. This lawyer did not ultimately try the case because "he wanted to run for judge and passed the case along to somebody else" in the law firm. Trial counsel worked in this law firm and became Petitioner's lawyer about six months prior to trial. According to Petitioner, trial counsel came to see him "one time" while he was incarcerated. Petitioner actually made bail prior to trial, so he was not incarcerated the entire time leading up to the trial.

Petitioner claimed that trial counsel "never ask[ed] what happened" and that he presented his story to trial counsel for the first time in a letter he wrote on October 15, 2010, about two months after trial counsel took over the case and about four months prior to trial. In the letter, Petitioner explained the circumstances under which he gave his statement to police, including police coercion and threats of taking his baby's mother to

- 2 -

jail. Petitioner claimed that police held him in a cold room, refused to give him a blanket, and threatened him during his detention. Petitioner insisted that he was suffering from a sinus infection at the time of his arrest and that he was in pain as a result of this infection. He explained that he gave a false statement "[b]ecause [he] felt like they would leave [him] alone, and [he] was scared that they really might take [the mother of his child] to jail."

Petitioner asked trial counsel to file a motion to suppress his statement to police for several months after trial counsel took over on the case. Trial counsel eventually filed a motion a few days prior to trial. Petitioner claimed that he first met with trial counsel in person outside of jail "probably within two, three, four[ ]days, maybe" before the suppression hearing. After a hearing, the trial court orally denied the motion to suppress. Petitioner stated that trial counsel did not discuss the effect of the denial of the motion to suppress or the eventual introduction of Petitioner's statement on his defense.

Petitioner recalled trial counsel presenting him with an offer to settle the case and thought that this occurred after the suppression hearing. From this meeting at trial counsel's office, Petitioner understood that the offer was "17[ ]years" and that the offer "might be the best [trial counsel] can do." At the time, Petitioner was twenty years old. Petitioner identified a form he signed acknowledging that he and trial counsel discussed the State's offer. Petitioner admitted that he declined the State's offer.

Petitioner testified that trial counsel did not discuss the elements of the offenses for which he was charged and did not talk to him about a defense or whether he should testify at trial. Petitioner recalled that he brought several witnesses to see trial counsel, including Kassandra Santos,[1] Shawntre[2] Brown, and "[s]omebody else." Petitioner wanted these witnesses to testify at trial. According to Petitioner, these witnesses came to trial but were not called to testify. In fact, Petitioner claimed that there was "not really" any proof put on during defense.

Petitioner recalled trial counsel had a private investigator assigned to the case, but Petitioner claimed that he did not know the name of the investigator and never met with the investigator. Petitioner remembered that the investigator "interviewed [Petitioner's] mom, and then when he was backing out of the driveway he ran into the neighbor's mailbox, and that's the last time we heard of him."

---

[1] Ms. Santos's name is spelled with both a "C" and a "K" in the record. We are uncertain of the correct spelling and have tried to remain consistent, spelling it with a "K."

[2] Ms. Brown's name is spelled several different ways in the record. We are uncertain of the correct spelling and have tried to remain consistent throughout this opinion.

Petitioner was offended at trial when counsel for the State "called [him] a terrorist." Petitioner was upset that trial counsel did not object. After Petitioner was convicted, he learned that he and trial counsel had actually dated the same woman, Brittany Vanwormer. Petitioner was dating Ms. Vanwormer at the time of his trial. Petitioner explained that he "probably woulda chose somebody else" to be his lawyer had he known this information. However, Petitioner admitted that there was no way trial counsel would have known that Petitioner was dating Ms. Vanwormer because he brought the mother of his children to meetings with trial counsel, not Ms. Vanwormer. In fact, Petitioner acknowledged that Ms. Vanwormer was actually a codefendant in "the Subway robbery."[3]

Naomi Porter, the mother of Petitioner's son and daughter, testified at the post-conviction hearing. She attended the trial for "moral support" but did not appear as a witness. During the trial, Ms. Porter saw one witness get off the witness stand and leave the courtroom. Shortly thereafter, Ms. Porter "was walking out to use the rest room" and saw the witness talking to another witness. She informed the trial judge about what she saw and heard but did not recall whether the trial court called her as a witness to testify about what she heard the witnesses say in the hallway. Ms. Porter further testified that she saw trial counsel talking to Ms. Vanwormer in the hallway during Petitioner's sentencing hearing. Ms. Porter confronted trial counsel and Ms. Vanwormer at trial but explained that she and Petitioner were not dating at the time of trial. She explained that she and Petitioner broke up for a while for "personal issues." When the couple was separated, Petitioner dated Ms. Vanwormer.

Terri Tomlinson, Petitioner's mother, testified at the post-conviction hearing. She confirmed that she initially hired someone else to represent Petitioner but that this lawyer ended up running for judge. The lawyer recommended trial counsel, another lawyer at the law firm. Ms. Tomlinson met with trial counsel on "[q]uite a few" occasions to discuss Petitioner's defense. She thought Petitioner was eighteen years old at the time he was arrested and around twenty when the case went to trial. She recalled that there were some concerns about Petitioner's mental state which led to evaluations being performed on Petitioner. Ms. Tomlinson claimed that trial counsel did not prepare a defense but "just kept trying to get [Petitioner] to plead." Ms. Tomlinson became aware of witnesses, including Ms. Santos, Ms. Brown, and several neighbors at the A&W Motel who would have helped Petitioner's defense. However, trial counsel "investigated nothing," even after Ms. Tomlinson "found the girl that was in the car with [Petitioner]." Ms. Tomlinson had some of these witnesses come to trial, but trial counsel said that he was not going to use them at trial.

---

[3] From what we can glean, the "Subway robbery" is a different case involving both Petitioner and Ms. Vanwormer.

Trial counsel testified that he "inherited" Petitioner's case when a lawyer in his firm was elected as a judge. He did not recall if he met with Petitioner prior to taking over his case but acknowledged that he filed a motion to substitute counsel on which trial counsel "signed [Peititoner's] name by permission." At the time he took over Petitioner's case, he had participated in "[z]ero" criminal trials, jury trials, or murder cases. Trial counsel did not seek assistance from any of the other lawyers at the firm because there was not another criminal defense attorney at the firm. Trial counsel filed a motion to declare Petitioner indigent and for appointment of a private investigator. The trial court appointed Jeff Fowler. Trial counsel was under the impression that Investigator Fowler talked to a "number" of witnesses, but he never received any reports from the investigator. In fact, trial counsel testified that the firm was "dissatisfied with [Investigator Fowler's] performance" and had "not used his services anytime thereafter."

Trial counsel met with Petitioner five times at jail and eight times in person prior to trial. According to his file, he had some difficulty getting Petitioner to meet with him once he was out on bail, but trial counsel "thought [they] had a decent relationship." Trial counsel recalled that he filed a motion to suppress prior to trial and that the trial court held a hearing on the motion. Petitioner testified at the hearing, and the trial court denied the motion. Trial counsel explained that he waited to file the motion until approximately eleven days before trial because there was the possibility of a plea agreement. When Petitioner failed to accept the State's settlement offer of twenty years at 85%, he filed the motion to suppress.

Trial counsel acknowledged that the codefendants, both juveniles, accepted plea agreements in exchange for their testimony. He explained that they received a "slap on the wrist" for their involvement in the crime. After the trial court denied the motion to suppress, trial counsel explained that the "defense was the lack of evidence that the State would have that [Petitioner] actually participated in the robbery" and that one of the codefendants actually committed the robbery. He explained, "candidly, . . . it was a challenge given the felony murder [charge]."

Trial counsel acknowledged that he did not seek funds for a false confession expert or a DNA expert. After reviewing a portion of the trial transcript, trial counsel recalled that the State attempted to introduce a DNA report that "could not exclude [Petitioner] as a minor contributor" to DNA found on a bandana that was stuffed in a macaroni and cheese box in the trash can inside Petitioner's apartment. Trial counsel explained that he objected to the introduction of the report because it had not been disclosed by the State. The trial court sustained the objection. Trial counsel admitted that he failed to ask the trial court to strike the testimony of the witness and failed to ask for a mistrial. He agreed that there was no strategic reason to ask to strike the testimony

since the trial court was already striking the report from evidence and admonished the jury on what to do with the evidence.

Trial counsel did not recall an instance during trial when there were allegations of witnesses talking in the hallway. However, when he reviewed the transcript, he acknowledged that there was something that happened at trial with regard to witnesses talking in the hallway. He initially could not recall if he filed a "skeletal motion for new trial to toll the statutory timeline" but acknowledged that the record reflected that he filed a motion for new trial prior to sentencing. He acknowledged that he did not include the witness issue in the motion for new trial but explained that he merely filed a motion for new trial in order to toll the statute of limitations.

Trial counsel acknowledged that he represented Petitioner through the sentencing hearing, at which he made an oral motion to withdraw. Trial counsel explained on cross-examination that he became aware at the sentencing hearing that Petitioner may have been dissatisfied with the representation. He admitted that the motion did not include any complaints with regard to the denial of the suppression motion and acknowledged that there was no order denying the motion to suppress in the technical record. In his opinion, this "prejudiced [Petitioner] by not having that order [denying the motion to suppress] brought to the attention of appellate counsel so as to bring it up in the motion for new trial and appeal." Trial counsel thought that the denial of the motion to suppress would be brought up on appeal.

Trial counsel recalled going on a "few dates" with Ms. Vanwormer in 2007 or the beginning of 2008. He did not characterize their relationship as "serious" and explained that he met his wife in May of 2008. Trial counsel saw Ms. Vanwormer in 2009 because she was at the law firm after she had been charged with a crime. Trial counsel never saw Petitioner and Ms. Vanwormer together but recalled that they may have been charged as codefendants in a case.

Appellate counsel was appointed to represent Petitioner after the sentencing hearing. Appellate counsel had worked on approximately 800 appeals, "a lot of those criminal." A preliminary motion for new trial had already been filed by trial counsel. Appellate counsel filed "at least one, if not two" more motions for new trial. He called the initial motion for new trial he filed was a "marker motion" until the transcripts were filed and he was able to review the record. When he finally received and reviewed the record, he noticed that "there was no evidence that there had ever been a hearing" on the motion to suppress. He explained that "[i]f there had been an order or something like that [on the motion to suppress, he would] have probably [gone] in a different direction" with the motion for new trial. For this reason, he determined "sufficiency [of the evidence] really was the only horse to ride" on appeal, so it was the only thing that he included in

the motion for new trial. Appellate counsel recalled that "the State had a very strong case" with an eyewitness and fingerprints but acknowledged that if the motion to suppress was denied and the case proceeded to trial, it was "probably" an issue he would raise on appeal. Appellate counsel acknowledged that he abandoned the issue with regard to corroboration of statements made by codefendants on appeal because it was without merit.

Brittany Nicole Myrick, formerly Brittany Vanwormer, testified at the hearing. She recalled that she dated Petitioner but could not recall an exact date. She thought that it was before 2011 when she was charged in the "Subway robbery." Ms. Myrick also admitted that she went on several dates or "hung out" with trial counsel when she was seventeen, in approximately 2007. Ms. Myrick never informed trial counsel that she was dating Petitioner.

After the hearing, the post-conviction court denied relief. The post-conviction court noted that neither Shawntre Brown nor Kassandra Santos testified at the post-conviction hearing and there was "no proof in the record to substantiate that either of these individuals would or could testify." The post-conviction court determined that, without Ms. Brown's or Ms. Santos's testimony, Petitioner could not prove that trial counsel was deficient. The post-conviction court found that trial counsel met with Petitioner on a number of occasions prior to trial and secured a settlement offer from the State, which was communicated to Petitioner as evidenced by his signature on an acknowledgement form. As a result, the post-conviction court determined that trial counsel was not deficient. Further, the post-conviction court reviewed the trial record and determined that trial counsel did not fail in his performance at trial by failing to object to certain questions posed to or statements made by witnesses because the evidence would not have been excluded at trial. With regard to the allegation that the State withheld evidence, the post-conviction court determined that there was no evidence presented at the hearing or in the petition to support this allegation. Finally, the post-conviction court determined that appellate counsel, who was highly qualified, was not ineffective and that Petitioner failed to establish the first prong of *Strickland*.

Petitioner filed a timely notice of appeal. He now challenges the post-conviction court's denial of post-conviction relief.

*Analysis*

On appeal, Petitioner argues that the post-conviction court improperly denied relief. Specifically, Petitioner argues that he received ineffective assistance of counsel because he was "prejudiced multiple ways relating to the late filing of the motion to suppress" and that he did not understand or have time to process the settlement offer after

the motion to suppress was denied in such close proximity to trial. Petitioner also complains about the lack of a trial court order denying the motion to suppress and the fact that the suppression issue was not included in a motion for new trial or on appeal. Additionally, Petitioner complains that mistakes made during trial, including trial counsel's failure to exclude the testimony of agent Brad Everett about a DNA report and trial counsel's failure to move to exclude the testimony of prosecution witnesses who were observed talking to each other in the hallway, led to his inability to appeal the issues. He further argues that trial counsel's deficiencies led to Petitioner's inability to pursue certain issues on appeal.

*Post-Conviction Standard of Review*

Post-conviction relief is available for any conviction or sentence that is "void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. In order to prevail in a claim for post-conviction relief, a petitioner must prove his factual allegations by clear and convincing evidence. T.C.A. § 40-30-110(f); *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998). On appeal, this Court will review the post-conviction court's findings of fact "under a de novo standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise." *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App. P. 13(d); *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997)). However, the post-conviction court's conclusions of law and application of the law to the facts are reviewed under a purely de novo standard, with no presumption of correctness. *Id.* at 458.

Both the Sixth Amendment to the Constitution of the United States and article I, section 9 of the Tennessee Constitution guarantee the right of an accused to the effective assistance of counsel. *See Davidson v. State*, 453 S.W.3d 386, 392-93 (Tenn. 2014). In order to sustain a claim of ineffective assistance of counsel, a petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under the two prong test established by *Strickland v. Washington*, 466 U.S. 668, 687 (1984), a petitioner must prove that counsel's performance was deficient and that the deficiency prejudiced the defense. *See State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of counsel applied in federal cases also applies in Tennessee). Because a petitioner must establish both elements in order to prevail on a claim of ineffective assistance of counsel, "failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on

the claim." *Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997). "Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 697). Whether a petitioner has been denied the effective assistance of counsel presents a mixed question of law and fact. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999).

The test for deficient performance is whether counsel's acts or omissions fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 688; *Henley*, 960 S.W.2d at 579. This Court must evaluate the questionable conduct from the attorney's perspective at the time, *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982), and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. This Court will not use hindsight to second-guess a reasonable trial strategy, even if a different procedure or strategy might have produced a different result. *See Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994); *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). However, this deference to the tactical decisions of trial counsel is dependent upon a showing that the decisions were made after adequate preparation. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Even if a petitioner shows that counsel's representation was deficient, the petitioner must also satisfy the prejudice prong of the *Strickland* test in order to obtain relief. The question is "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). A petitioner must show that there is a reasonable probability "sufficient to undermine confidence in the outcome" that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Burns*, 6 S.W.3d at 463 (quoting *Strickland*, 466 U.S. at 694). "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* (quoting *Strickland*, 466 U.S. at 691).

*A. Motion to Suppres*s

The State argues that Petitioner waives any issue with regard to whether trial counsel was ineffective for filing the motion to suppress "only 11 days before trial" because he raises it "for the first time on appeal." We have reviewed the petition and amended petition for post-conviction relief and agree.[4] However, Petitioner's complaint

---

[4] In our review of the record, the only issues raised by Petitioner with regard to the motion to suppress appear in the first petition for post-conviction relief. They include: (1) trial counsel failed to

- 9 -

on appeal seems to be tied more closely to how the timing of the filing of the motion to suppress impacted his understanding of the State's settlement offer and/or the inability of trial counsel to secure a favorable offer − an allegation of ineffective assistance contained within his petition. With regard to this allegation, the post-conviction court determined that trial counsel met with Petitioner on a number of occasions and that there was no proof in the record that trial counsel failed to negotiate a settlement. In fact, the post-conviction court noted that trial counsel did receive a settlement offer and that the record included an acknowledgement form that was signed by Petitioner with regard to the settlement offer. The record does not preponderate against the post-conviction court's findings of fact on this issue. Moreover, Petitioner has failed to prove prejudice by clear and convincing evidence – he never testified that, but for counsel's alleged deficiency in filing the motion to suppress so close to trial, he would have accepted the plea agreement.

Petitioner's brief also goes on to argue that both trial counsel and appellate counsel were ineffective because they failed to challenge the denial of the motion to suppress in the motion for new trial and on appeal. Of course, a defendant has a right to effective representation both at trial and on direct appeal. *Campbell v. State*, 904 S.W.2d 594, 596 (Tenn. 1995) (citing *Evitts v. Lucey*, 469 U.S. 387, 394 (1985)). The test for ineffective assistance of counsel is the same for both trial and appellate counsel, under the *Strickland* standard set forth above. *Id.* That is, a petitioner alleging ineffective assistance of appellate counsel must prove both that appellate counsel was deficient in failing to adequately pursue or preserve a particular issue on appeal and that, absent counsel's deficient performance, there was a reasonable probability that the issue "would have affected the result of the appeal." *Id.* at 597; *see also Carpenter v. State*, 126 S.W.3d 879, 886-88 (Tenn. 2004).

Regarding claims of ineffective assistance by appellate counsel, our supreme court has provided:

> Appellate counsel are not constitutionally required to raise every conceivable issue on appeal. Indeed, experienced advocates have long emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most a few key issues.

> The determination of which issues to raise on appeal is generally within appellate counsel's sound discretion. Therefore, appellate counsel's

identify as a ground for new trial that the trial court erred in admitting [Petitioner's] out of court statements to law enforcement officials; and (2) appellate counsel failed to argue in the motion for new trial or on appeal that the trial court erred in admitting the out of court statements. The "Supplement to Petition for Post-Conviction Relief" does not raise any issues with regard to the motion to suppress.

professional judgment with regard to which issues will best serve the appellant on appeal should be given considerable deference.

*Carpenter*, 126 S.W.3d at 887 (internal quotation marks and citations omitted).

When a petitioner alleges that counsel was deficient for failing to raise an issue on direct appeal, the reviewing court must determine the merits of that issue. *Id.* "Obviously, if an issue has no merit or is weak, then appellate counsel's performance will not be deficient if counsel fails to raise it." *Id.* Further, when an omitted issue is without merit, the petitioner suffers no prejudice from appellate counsel's failure to raise the issue on appeal and cannot prevail on an ineffective assistance of counsel claim. *Id.* at 887-88. Appellate counsel's professional judgment is entitled to considerable deference with regard to which issues best served the petitioner on appeal. *Id.* at 887.

Petitioner takes particular issue with the fact that there was no written order filed by the trial court denying the motion to suppress. The record before this Court includes the record from the direct appeal that was submitted as an exhibit at the post-conviction hearing. In February the 17, 2011 transcript of the hearing on the motion to suppress, the trial court clearly stated he did "not find that there are any factors that would even suggest the suppression of this statement. So, this statement will be admissible and may be presented to the jury." In other words, the trial court clearly denied the motion to suppress. Moreover, Rule 12(e) of the Tennessee Rules of Criminal Procedure does not require a trial court to enter a written order denying a pretrial motion. The rule mandates that the trial court "shall state its essential findings on the record" in cases were "factual issues are involved in deciding a motion." Tenn. R. Crim. P. 12(e). The trial court in this case made a ruling on the motion on the record at the hearing.

In reviewing a trial court's ruling on a motion to suppress, this Court will uphold the trial court's findings of fact "unless the evidence preponderates otherwise." *State v. Bell*, 429 S.W.3d 524, 528 (Tenn. 2014) (citing *State v. Climer*, 400 S.W.3d 537, 556 (Tenn. 2013)). Witness credibility, the weight and value of the proof, and the resolution of conflicts in the proof "are matters entrusted to the trial court as the trier of fact." *Id.* at 529. "The party prevailing in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." *State v. Binette*, 33 S.W.3d 215, 217 (Tenn. 2000) (quoting *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). The trial court's resolution of questions of law and application of the law to the facts are reviewed de novo with no presumption of correctness. *State v. Day*, 263 S.W.3d 891, 900 (Tenn. 2008). On appeal, the losing party bears the burden of demonstrating that a trial court's decision concerning a motion to suppress was erroneous. *State v. Harts*, 7 S.W.3d 78, 84 (Tenn. Crim. App. 1999). "[I]n evaluating the correctness of a trial court's ruling on a pretrial

motion to suppress, appellate courts may consider the proof adduced both at the suppression hearing and at trial." *State v. Henning*, 975 S.W.2d 290, 299 (Tenn. 1998).

At the hearing on the motion to suppress, Petitioner and Ms. Porter testified that Petitioner was sick at the time of the interview. Petitioner claimed that he was threatened, that the room in which he was held was cold, and that officers denied him a blanket. However, Detective Tim Finley's testimony was contradictory to the testimony of Petitioner. The trial court accredited the detective's recollection of the events and denied the motion.

The denial of the motion for new trial was raised in the petition for post-conviction relief and discussed at the post-conviction hearing. However, the post-conviction court failed to make any specific findings with regard to this issue in its order dismissing the petition. While the post-conviction court did not specifically discuss the motion to suppress in its order, the post-conviction court concluded that Petitioner was not prejudiced by trial counsel's or appellate counsel's representation. Moreover, a post-conviction court's failure to set forth findings with regard to each and every ground presented in a post-conviction petition does not necessitate reversal. *See Michael Davis v. State*, No. W2017-01592-CCA-R3-PC, 2018 WL 3599959, at \*5 (Tenn. Crim. App. July 26, 2018), *no perm. app. filed*. Petitioner did not establish that any challenge to the denial of the motion to suppress would have been successful if presented on appeal, and our review of this issue indicates that Petitioner would not have been successful had the issue been raised on appeal because the evidence does not preponderate against the trial court's findings of fact. Thus, Petitioner did not establish that he was prejudiced by the failure of trial counsel and/or appellate counsel to raise this issue on appeal and Petitioner is not entitled to relief on this ground.

### B. Trial testimony of Agent Brad Everett

Petitioner argues that trial counsel was ineffective for failing to move to exclude all the testimony of Agent Brad Everett after the trial court excluded a DNA report that the State failed to turn over to the defense in discovery. Petitioner concedes that trial counsel properly objected to the admission of the report into evidence and that the trial court sustained the objection. However, Petitioner complains that the substance of the report was before the jury even though the report itself was excluded from evidence. To support his argument, Petitioner notes that this Court relied on the introduction of DNA evidence against Petitioner at trial to support a finding that the evidence was sufficient. The State asserts that Petitioner failed to demonstrate that trial counsel was deficient.

As discussed above, at trial, during the testimony of Agent Everett, the State attempted to introduce a DNA report that had not been disclosed to the defense. Trial

counsel objected, the report itself was not admitted into evidence, and the parties were precluded from referencing the contents of the report in closing argument. Agent Everett was, however, permitted to testify that he conducted DNA analysis of the substance found on a bandana recovered from Petitioner's apartment and that tests indicated the presence of blood on the bandana and on the gun that was recovered near a restaurant. Agent Everett was also allowed to testify that DNA from the bandana was a mixture of at least three individuals, including the victim, and that Petitioner and codefendant Hodges could not be excluded as minor contributors. Trial counsel did not ask to strike all of the testimony of Agent Everett. At the post-conviction hearing, trial counsel could not recall what strategy guided his decision but recalled discussing the issue with Petitioner at trial and indicated it could have been a strategic decision. Petitioner has not established that he was prejudiced either by trial counsel's failure to move to strike the testimony or by appellate counsel's failure to raise this issue on appeal. Thus, Petitioner is not entitled to relief on this ground.

### C. Witnesses Violating Rule of Sequestration

Lastly, in a three-sentence paragraph with no citation to authority, Petitioner complains that "prosecution witnesses spoke in the hallway outside the courtroom, against the sequestration rules/order of the court." Ordinarily, "[i]ssues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this [C]ourt." Tenn. Ct. Crim. App. R. 10(b). Despite the waiver, we note that at trial, the matter was brought to the attention of the trial court. The trial court had a jury-out hearing at which both women told the trial court the substance of their conversation and the trial court denied Petitioner's motion to exclude the testimony of one of the women, Ms. Evans. At the post-conviction hearing, Petitioner brought Ms. Porter to testify about the things she overheard the witnesses discussing in violation of the rule of sequestration. Ms. Porter was unable to offer any testimony that these State witnesses had any inappropriate discussions. Thus, Petitioner failed to prove this allegation with clear and convincing evidence. Petitioner is not entitled to relief on this issue.

### Conclusion

For the foregoing reasons, the judgment of the post-conviction court is affirmed.

_____

TIMOTHY L. EASTER, JUDGE

- 13 -