IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs April 2, 2019

**STATE OF TENNESSEE v. JACOB SMITH**

**Appeal from the Circuit Court for Madison County**
**No. 17-438   Kyle Atkins, Judge**

_____

**No. W2018-01630-CCA-R3-CD**

_____

The Defendant, Jacob Smith, was convicted of driving under the influence of an intoxicant ("DUI") and leaving the scene of an accident.  He received an effective sentence of eleven months and twenty-nine days suspended after five days of incarceration.  On appeal, the Defendant challenges the sufficiency of the evidence to support his DUI conviction.  Upon review of the record and applicable law, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, P.J., delivered the opinion of the court, in which ALAN E. GLENN and TIMOTHY L. EASTER, JJ., joined.

Lloyd R. Tatum (on appeal) and G.W. Sherrod III (at trial), Henderson, Tennessee, for the Appellant, Jacob Smith.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Assistant Attorney General; Jody Pickens, District Attorney General; and April Knight, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**FACTUAL BACKGROUND**

On November 6, 2017, Mr. Ricky White and Mrs. Linda White awoke at approximately 4:00 a.m. to the sound of a vehicle crashing into their home.  When they ran to the front door to see what had caused the sound, they discovered that they were unable to open the front door.  When she was able to open the door, Mrs. White saw the

Defendant standing outside with "a gash on his head." The Defendant apologized, asked them not to call the police, and assured them that he would pay for the damage. Mrs. White testified that she told the Defendant that she planned to call the police.

Mrs. White returned inside to call 9-1-1, and Mr. White went inside to get a jacket. When they went back outside, the Defendant was gone. At trial, Mrs. White testified that she did not see anyone other than the Defendant outside. Mrs. White stated that there was approximately $70,000 of damage to her house. On cross-examination, she stated that her insurance covered the damages and that although she did have to pay a deductible of $1,000, she was later reimbursed for that amount.

Mr. White's testimony was consistent with his wife's testimony. Mr. White said that he went outside through the carport door and spoke with the Defendant for approximately five to ten minutes. The Defendant asked him not to call the police and offered to pay for the damage.

Madison County Sheriff's Deputy Dale Baker was the first officer to arrive on the scene. He saw a black, four-door car sitting in the corner of the brick house. Deputy Baker said that the Whites were the only people there when he arrived. Deputy Baker recalled that Mr. White described the man who had wrecked the car into the house. Mr. White described him as a white male, approximately six feet tall, clean cut, light brown hair, and he had a gash on his forehead.

Deputy Baker stated that the driver's side airbag was the only airbag that had deployed and that the only indention on the windshield was also on the driver's side. While Deputy Baker was conducting an inventory search of the vehicle, he found paperwork with the Defendant's name and address on it. Deputy Baker asked another officer, Deputy William Holbrook, to go to the address on the paperwork.

Deputy Holbrook went to the address given to him by Deputy Baker. When he arrived, he observed a light on in the front of the house. The light was then turned off, and he believed he saw someone run from the back of the house. He then knocked on the door, and a teenage girl answered the door. While he was talking to her, Ms. Tiffani Cronin, the Defendant's fiancée, came to the door and told him that the Defendant was "hiding inside the residence." She led him to the Defendant. Deputy Holbrook noted that the Defendant had a laceration on his forehead. Deputy Holbrook smelled the odor of alcohol on the Defendant.

Deputy Holbrook stated that the Defendant immediately told him that his cousin had been driving the car because his cousin was the designated driver that night. Deputy Holbrook said the Defendant told him that he had consumed a twelve-pack of beer.

Deputy Holbrook stated that over the course of his conversation with the Defendant, the Defendant's story changed several times. At first, the Defendant told Deputy Holbrook that "it was just him and his cousin driving" in the car. Later, the Defendant told Deputy Holbrook that there were four people in the vehicle, that his cousin was the driver, and that his cousin swerved to avoid hitting two deer and crashed into a house. Deputy Holbrook said the Defendant had "bloodshot[,] red, glossy," and "watery" eyes and smelled of alcohol. The Defendant refused to do a field sobriety test and told him, "I'm too f****ng drunk for this." Deputy Holbrook admitted that he did not order a blood alcohol test or a breathalyzer to test the Defendant's blood alcohol content because he believed that Deputy Baker was going to order the test.

Ms. Rose Gogel, one of the Whites' neighbors, also testified for the State. While she was sleeping, a loud noise woke her. She and her husband looked outside in an effort to discover what had happened. She could not see anything because it was still dark outside. She later discovered that her mailbox had been hit. Two or three days later, the Defendant and two women stopped at her house while the mailbox was being replaced. Ms. Gogel stated that the Defendant apologized and admitted to hitting her mailbox. She recalled that the Defendant admitted to drinking too much alcohol on the night of the accident.

Ms. Jasmine Ross, at friend of Ms. Cronin, testified on behalf of the Defendant. Ms. Ross was at the Defendant and Ms. Cronin's house on the night of the wreck. At some point in the night, Ms. Cronin woke her up and told her that they needed to search for a car that was in a ditch. Ms. Ross and Ms. Cronin left the house to look for the car. They discovered that the car was not in a ditch. When they found the car, police officers were already there. They did not stop; instead, they returned to the house. Ms. Ross recalled that police officers were on the porch when they returned to the house. Ms. Ross's fourteen-year-old niece was also on the porch when they returned. Ms. Ross remembered that three patrol cars and five or six officers were present at the house and that the Defendant was interacting with the police officers. She saw one of the officers shining a flashlight in the Defendant's face. The officer also had the Defendant walk. Ms. Ross believed that the Defendant was performing a field sobriety test. She admitted that she could not hear the conversation between the officer and the Defendant. On cross-examination, she stated that she could not see if the Defendant was staggering while he walked.

Ms. Michelle Julian, Ms. Cronin's mother, was spending the weekend at the Defendant and her daughter's house. She testified that the Defendant left the house in Ms. Cronin's car earlier in the evening to go watch a game with his friend. Ms. Julian, Ms. Cronin, and Ms. Ross remained at the house with the children and fell asleep before the Defendant returned. At some point in the night, the Defendant woke Ms. Cronin and

informed her that he had "run the car off the road." Ms. Julian went with Ms. Cronin and Ms. Ross to look for the car. When they realized that the Defendant had not crashed into a ditch, they returned to the house.

Ms. Julian recalled seeing two police officers at the house when they returned, although she did not interact with either officer. She observed the officers shining a light in the Defendant's face and requesting that the Defendant "put his hands out and walk[]." Ms. Julian admitted that she could not hear the conversation between the officers and the Defendant. On cross-examination, Ms. Julian clarified that when they left the house, the Defendant was there with the children.

Ms. Cronin testified that the Defendant woke her and told her that he had driven the car into a ditch. She left to go check on the car with Ms. Julian and Ms. Ross. She saw a police officer on the porch when she returned. She clarified that when she first arrived there were two police officers present and that a third police officer arrived later. An officer asked if the Defendant was inside, and she informed him that he was. She observed the officers interact with the Defendant. She recalled the officers asking the Defendant questions about "what had happened, things of that nature, and then went on to perform a field sobriety test." She stated that she did not hear the Defendant make a comment about consuming a twelve-pack of beer.

On cross-examination, Ms. Cronin stated that when the Defendant returned to the house, he had a cut on his forehead that was bleeding. She testified that the Defendant did not smell of alcohol or act like he was inebriated. Instead, she believed that he acted as though he were in shock. She never heard the Defendant mention a cousin. Ms. Cronin was with the Defendant a few days later when he offered to pay one of the homeowners for her mailbox.

The jury found the Defendant guilty of DUI and leaving the scene of an accident. The trial court sentenced the Defendant to concurrent sentences of eleven months and twenty-nine days for DUI and thirty days for leaving the scene of an accident. The trial court ordered the Defendant to serve five days incarcerated and the remainder of his sentence on probation. The Defendant filed a motion for a new trial, which the trial court denied. The Defendant now appeals.

## ANALYSIS

The Defendant maintains that the evidence is insufficient to support his DUI conviction. The standard for appellate review in determining the sufficiency of the evidence is "'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have the essential elements of the crime

beyond a reasonable doubt.'" *State v. Davis*, 354 S.W.3d 718, 729 (Tenn. 2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).  A defendant "must demonstrate that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt" in order to obtain relief on a claim for insufficient evidence.  *State v. Perrier*, 536 S.W.3d 388, 408 (Tenn. 2017).  Further, because a jury conviction removes a defendant's presumption of innocence and "replaces it with one of guilt at the appellate level, the burden of proof shifts from the State to the convicted defendant," who must demonstrate that the evidence is insufficient support the jury's verdict.  *Id.*

Appellate courts "will not substitute our own inferences drawn from the evidence for those drawn by the jury, nor will we reweigh or re-evaluate the evidence."  *Id.* (citing *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011)).  The determination of "'[t]he credibility of witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact.'"  *Dorantes*, 331 S.W.3d at 379 (quoting *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008)).

Tennessee Code Annotated section 55-10-401(1) provides:

It is unlawful for any person to drive or to be in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state, or on any streets or alleys, or while on the premises of any shopping center, trailer park, or apartment house complex, or any other premises that is generally frequented by the public at large, while:

(1) Under the influence of any intoxicant, marijuana, controlled substance, controlled substance analogue, drug, substance affecting the central nervous system, or combination thereof that impairs the driver's ability to safely operate a motor vehicle by depriving the driver of the clearness of mind and control of oneself that the driver would otherwise possess.

The Defendant maintains that the evidence presented at trial is not sufficient to support his DUI conviction.  He argues that the absence of blood alcohol tests and proof about the timing of his conversation with Deputy Holbrook support reversing his conviction.  The Defendant asserts that the "odor of alcohol, alone, is insufficient to establish even probable cause for arrest for intoxication."  *See State v. Bell*, 429 S.W.3d 524, 536 (Tenn. 2014).  The Defendant argues that if the odor of alcohol is insufficient to establish probable cause for an arrest, then likewise it is insufficient to support his conviction.  The Defendant claims that Deputy Holbrook's "conclusions about the defendant's sobriety appear to be made solely upon the basis of the defendant's odor of alcohol" and that Deputy Holbrook's testimony was the only evidence that he was intoxicated.

The evidence presented at trial established that the Defendant crashed his car into the Whites' home and then fled the scene when they informed him that they were calling the police. Deputy Holbrook testified that the Defendant admitted to drinking a twelve-pack of beer that night. Further, Deputy Holbrook stated that the Defendant appeared to be intoxicated. The Defendant smelled of alcohol and had "bloodshot[,] red, glossy eyes." He declined to perform any field sobriety tests, asserting that he was too intoxicated to do so. Ms. Gogel testified that a few days after the wreck, the Defendant stopped by her house and apologized for knocking over her mailbox. She said that the Defendant told her he had drunk too much that night, and he offered to pay for the damaged mailbox. Viewing the evidence in the light most favorable to the State, we conclude that the evidence presented at trial was sufficient to support the DUI conviction.

## CONCLUSION

Based on the foregoing, we affirm the judgments of the trial court.

_____
JOHN EVERETT WILLIAMS, PRESIDING JUDGE