IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
April 28, 2020 Session

## STATE OF TENNESSEE v. JAMES GREENLEE DAVIS, JR.

**Appeal from the Criminal Court for Knox County**
**No. 103759   G. Scott Green, Judge**

_____

### No. E2019-00682-CCA-R3-CD

_____

Defendant, James Greenlee Davis, Jr., was convicted by a jury of possession of a controlled substance with intent to sell within a drug-free zone, possession of a controlled substance with intent to deliver within a drug-free zone, and criminal trespass. The trial court sentenced Defendant to twenty-year sentences for each of the drug convictions and to a thirty-day sentence for the criminal trespass conviction.[1] The trial court merged the drug convictions, and ordered the trespass sentence to be served concurrently to the drug sentence. The trial court denied Defendant's motion for new trial. Defendant argues the trial court erred by (1) denying the motion to suppress; (2) certifying Donna Roach as an expert; and (3) admitting the Knoxville-Knox County KUB Geographic Information Systems ("KGIS") map in to evidence. After a thorough review of the record, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and J. ROSS DYER, JJ., joined.

Ursula Bailey, Knoxville, Tennessee, for the appellant, James Greenlee Davis, Jr.

Herbert H. Slatery III, Attorney General and Reporter; Garrett D. Ward, Assistant Attorney General; Charme P. Allen, District Attorney General; and Philip Morton, Assistant District Attorney General, for the appellee, State of Tennessee.

---

[1] Defendant was also indicted and sentenced using gang enhancement provisions and initially received a forty-year sentence for Counts 1 and 2. Subsequently, Defendant was resentenced to twenty-years each after the gang enhancement was declared unconstitutional pursuant to *State v. Bonds*, 502 S.W.3d 118 (Tenn. Crim. App. 2016).

# OPINION

## *Facts and Procedural History*

On June 17, 2014, Defendant was indicted by a Knox County grand jury of one count of possession with intent to sell a controlled substance within a drug-free zone, one count of possession with intent to deliver a controlled substance within a drug-free zone, one count of evading arrest, and one count of criminal trespass. The indictment indicated that the State was seeking to apply the criminal gang enhancement statute to Defendant.

On September 22, 2015, a hearing was held on the motion to suppress evidence. After reviewing the evidence and applicable law, the trial court denied the motion to suppress. The trial court found that the officers had reasonable suspicion to stop Defendant. The trial court ruled that because the narcotics were found on the ground near Defendant, there was not a "constitutional problem with the recovery of the drugs. [The trial court overruled] the motion."

The following facts were adduced at trial. On July 29, 2013, Knoxville Police Officer Eric P'Simer and Sergeant James Lockmiller[2], were conducting a walking patrol of the Walter P. Taylor Homes complex. The complex is owned by Knoxville Community Development Corporation ("DCDC"). The complex had numerous "No Trespassing" signs posted throughout the property. The officers saw Defendant in parking lot L with his head and shoulders leaning inside the passenger window of a parked vehicle, interacting with two occupants.

As Officer P'Simer and Sergeant Lockmiller approached, they noticed Defendant shift, preventing the officers from seeing anything below his chest. Officer P'Simer asked Defendant if he was a resident, and the Defendant responded that he was not. As the officers were preparing to ask follow up questions, Defendant turned and began to run. Before the officers reached Defendant, he slipped on the grass and fell to the ground. As Defendant fell, Officer P'Simer saw a bag fall from Defendant's hand onto the ground. Officer P'Simer and Sergeant Lockmiller detained Defendant and retrieved the bag. The bag contained what appeared to be crack cocaine. Tennessee Bureau of Investigation lab testing identified the substance to be 3.06 grams of cocaine base. The officers conducted a pat down search of Defendant and found $962 in cash. Shortly thereafter, it was determined that neither Defendant or the occupants of the vehicle were

---

[2] Sergeant Lockmiller's name is spelled two different ways in the record, Lockmiller and Lochmueller. We will use Lockmiller as it is spelled in Defendant's brief and the State's brief.

residents of Walter P. Taylor Homes. Defendant's name was listed on a no trespass list maintained by KCDC.

Donna Roach, employed by KGIS, identified a map she created that showed parking lot L was located within 1000 feet of a recreation center, the Boys and Girls Club. The map was accurate to an error rate of one inch for every 100 feet.

After the State's proof was presented, Defendant moved for a judgment of acquittal on all counts. The trial court partially granted the motion and dismissed the evading arrest count. The remaining counts were sent to the jury, and the jury found Defendant guilty as charged on the remaining counts.[3] The trial court ultimately sentenced Defendant to twenty-years' incarceration each for Counts 1 and 2. Defendant received a sentence of thirty-days for Count 3. Counts 1 and 2 were merged, and Count 3 was ordered to be served concurrently with Counts 1 and 2. Defendant timely filed a motion for new trial, and the motion was denied by the trial court. It is from that denial that Defendant now appeals.

*Analysis*

Defendant argues that the trial court erred by overruling the motion to suppress evidence, that the trial court erred by allowing Ms. Roach to testify as an expert, and that the trial court erred by admitting the KGIS map when it was not relevant and not reliable. The State argues that the trial court did not err in denying the motion to suppress and admitting the KGIS map. The State further argues that that Defendant has waived the issue of Ms. Roach being qualified as an expert. We agree with the State.

*I. Motion to Suppress*

Defendant argues that that the trial court erred by denying the motion to suppress because Defendant was arrested without probable cause, and the drugs and money recovered were fruit of the poisonous tree. The State argues that the trial court properly exercised its discretion in denying the motion to suppress.

In reviewing a trial court's ruling on a motion to suppress, this Court will uphold the trial court's findings of fact unless the evidence preponderates otherwise. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). The party prevailing in the trial court is afforded "the strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence." *State v. Keith*, 978 S.W.2d 861, 864

---

[3] The trial was bifurcated and the jury then heard proof on the gang related enhancement charge. As it is not relevant to this appeal, we have not included those facts.

(Tenn. 1998). Questions concerning the "credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." *Odom*, 928 S.W.2d at 23. However, our review of the trial court's application of the law to the facts is de novo, with no presumption of correctness. *State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001).

The Fourth Amendment to the United States Constitution and Article I, section 7 of the Tennessee Constitution guarantee protection from unreasonable searches and seizures. *State v. Nicholson*, 188 S.W.3d 649, 656 (Tenn. 2006). "However, neither the Fourth Amendment nor Article I, section 7 limit all contact between police and citizens." *State v. Daniel*, 12 S.W.3d 420, 424 (Tenn. 2000). There are three categories of police-citizen interaction: (1) a full scale arrest which must be supported by probably cause; (2) a brief investigatory detention which must be supported by reasonable suspicion; and (3) brief police-citizen encounters which require no objective justification. *Id.* "While arrests and investigatory stops are seizures implicating constitutional protections, consensual encounters are not." *Nicholson*, 188 S.W.3d at 656. The State bears the burden of proving that a warrantless action was justified as a lawful investigatory stop or under some other exception to the warrant requirement. *Id.* at 656-657. We apply the totality of the circumstances analysis and the standard of whether a reasonable person would believe that he was not free to leave. *Id.* at 658.

When conducting an investigatory stop, an officer must be able to point to specific and articulable facts that taken with rational inferences reasonably warrant the stop. *Id.* at 659. "Whether reasonable suspicion for an investigatory stop exists must be evaluated under the totality of the circumstances known to the police at the time of the stop." *Id.* "Under the Tennessee Constitution, a seizure implicating constitutional protections occurs only if, in view of all of the circumstances surrounding the encounter, a reasonable person would have believed that he or she was not free to leave." *Id.* at 657. Our supreme court has stated

> whether a person has been physically restrained or has stopped or yielded to a show of authority by the police is not dispositive of whether there has been a seizure under the Tennessee Constitution. Instead, we apply the well-established totality of the circumstances analysis and the standard of whether a reasonable person would have believed that he or she was not free to leave.

*Id.*

Probable cause is more than mere suspicion, but less than certainty. *State v. Bell* 429 S.W.3d 524, 530 (Tenn. 2014). Probable cause exists when "at the time of the arrest,

the facts and circumstances within the knowledge of the officers, and of which they had reasonably trustworthy information, are sufficient to warrant a prudent person in believing that the defendant had committed or was committing an offense." *State v. Echols*, 382 S.W.3d 266, 277-78 (Tenn. 2012). "When determining whether probable cause existed for a warrantless arrest, courts should consider the collective knowledge that law enforcement possessed at the time of the arrest, provided that a sufficient nexus of communication existed between the arresting officer and any other officer or officers who possessed relevant information." *Bell*, 429 S.W.3d at 530.

At the motion to suppress hearing, Sergeant Lockmiller testified that he saw Defendant at the Walter P. Taylor Homes at 2:30 a.m. Defendant was leaning in the window of the passenger side of a parked vehicle interacting with the passengers in what looked to Sergeant Lockmiller like a hand-to-hand transaction. Sergeant Lockmiller saw some type of hand movement between the parties, and he and Officer P'Simer approached. At that point, Sergeant Lockmiller's goal was to engage Defendant to ascertain whether he was a resident of the complex. As he was approached, Defendant shifted his position and made "some sort of motion around his waistband." Defendant then backed away from the vehicle, turned to flee, and fell in the grass. Now the circumstances had changed and Sergeant Lockmiller felt it was reasonable to detain Defendant to establish whether Defendant was trespassing. Once Defendant had fallen, Sergeant Lockmiller detained him, and Officer P'Simer retrieved a bag from the ground in close proximity to Defendant that appeared to contain crack cocaine. Subsequently Sergeant Lockmiller found between $900 to $1000 in cash on Defendant's person. It was determined that the occupants of the vehicle were not residents of the complex. Within a short period of time it was discovered that Defendant was not a resident of the Walter P. Taylor Homes, and he was listed on a no trespass list maintained by the property and the Knoxville Police Department. After reviewing the evidence and applicable law, the trial court denied the motion to suppress. The trial court found that the officers had reasonable suspicion to stop Defendant. The trial court stated that

> It's 2:30 in the morning, [Defendant is] in a high crime area, [Sergeant Lockmiller] sees a person at the window of a SUV, and there's some sort of hand movement going on, as officers get closer to the vehicle the suspect begins to walk away from the vehicle and is doing something at his waistband, and then ultimately runs unwittingly into the arms of another police officer. [The trial court doesn't] have a problem with reasonable suspicion. I think that's clearly been shown."

The trial court went on to explain that the question then becomes "was there enough evidence there for a custodial arrest." The trial ultimately court ruled that because the

narcotics were found on the ground near Defendant, there was not a "constitutional problem with the recovery of the drugs. [The trial court overruled] the motion." The $962 was discovered as part of a search incident to a lawful arrest.

At the evidentiary hearing, the record does not show that Defendant had been asked about his possible residency at the housing complex prior to Defendant turning to flee. As distinguished from *Nicholson*, the police officers in *Nicholson* did not observe the defendant committing an illegal act. 188 S.W.3d at 663. The defendant happened to be walking through the same area as the group the police observed. *Id*. Here, the cause for Defendant's seizure was not simply that he was in the area that police officers were patrolling, as in *Nicholson*. *See id.* at 660. Sergeant Miller testified that at 2:30 a.m. in a parking lot of a housing complex, known to be a high crime area, he saw that Defendant engaged in a hand-to-hand transaction and that Defendant turned and shielded his body from Sergeant Lockmiller's view while doing something at his waistband. Defendant saw Sergeant Lockmiller, turned to flee, unexpectedly saw Officer P'Simer, and slipped on the wet grass. Police had reasonable suspicion to conduct an investigation before Defendant turned to flee. The investigation showed that Defendant was trespassing and that Defendant possessed crack cocaine. Given the totality of all these circumstances, the evidence does not preponderate against the findings of the trial court. Defendant is not entitled to relief.

## II. Expert Testimony

Defendant argues that the trial court erred in qualifying Ms. Roach as an expert. The State argues that the trial court properly qualified Ms. Roach as an expert but Defendant has waived the issue because it was not included in the motion for new trial.

Tennessee Rule of Appellate Procedure 3(e) provides in part that

in all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, jury instructions granted or refused, misconduct of jurors, parties or counsel, or other action committed or occurring during the trial of the case, or other ground upon which a new trial is sought, unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived.

Accordingly, this issue is waived. Defendant is not entitled to relief.

## III. KGIS Map

Defendant argues that the trial court erred in admitting the KGIS map. Defendant argues that the map was not relevant or reliable. The State argues that the map was properly admitted.

The admissibility of evidence rests within the trial court's sound discretion, and this Court will not overturn a trial court's decision regarding the admissibility of the evidence absent an abuse of that discretion. *State v. Clayton*, 535 S.W.3d 829, 859 (Tenn. 2017) "A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence." *State v. McCaleb*, 582 S.W.3d 179, 186 (Tenn. 2019). (quoting *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010)) (citations omitted). "[R]eviewing courts should review a [trial] court's discretionary decision to determine (1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the [trial] court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the [trial] court's decision was within the range of acceptable alternative dispositions. *Id.* "[T]he abuse of discretion standard of review does not permit an appellate court to substitute its judgment for that of the trial court." *Id.* (quoting *State v. Harbison*, 539 S.W.3d 149, 159 (Tenn. 2018)).

Evidence must be relevant to be admissible. Tenn. R. Evid. 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. Tennessee courts have recognized that evidence can be so unreliable as to render it irrelevant. *State v. Pierce*, 138 S.W.3d 820, 826 (Tenn. 2004).

Here, the map contained a disclaimer which states "KGIS makes no representation or warranty as to the accuracy of this map and its information nor its fitness for use." Defendant argues that this disclaimer makes the map unreliable, and therefore irrelevant. However, the jury heard testimony from Ms. Roach that the map was accurate to within one inch for every 100 feet. Given the accuracy as testified by Ms. Roach, the map was relevant to establish Defendant was within 1000 feet of a drug free zone. This uncontroverted rate of accuracy cannot be said to be so unreliable as to render the trial court's admittance of the relevant map an abuse of discretion. Defendant is not entitled to relief.

*Conclusion*

For the foregoing reasons, the judgments of the trial conviction court are affirmed.

_____
TIMOTHY L. EASTER, JUDGE